The People of the State of New York, Appellant, *v.* Rose Cohen, Respondent.

The People of the State of New York, Appellant, *v.* Anna Rosen, Respondent.

Equitable Casualty and Surety Company, Surety, Respondent.

First Department, May 29, 1930.

*Michael J. Driscoll, Deputy Assistant District Attorney,* of counsel [*Thomas C. T. Crain, District Attorney*], for the appellant.

*Alfred M. Lindau* of counsel [*William T. Gossett* with him on the brief; *Benjamin Frindel,* attorney], for the surety, respondent.

Sherman, J. The controlling facts in these two cases are substantially alike. The defendants Cohen and Rosen were arrested

together, each being charged with the crime of petit larceny. On December 17, 1928, they pleaded not guilty to these charges in the Court of Special Sessions and trials were set for December 19, 1928. On December 17, 1928, when arraigned, they were released on bail of $5,000 as to each defendant, respondent furnishing bonds in those amounts for their appearances. On the day set for trial, December 19, 1928, neither appeared, and thereupon bail in each case was duly forfeited, and on December 26, 1928, judgment was duly entered on said forfeitures. On February 18, 1929, the surety was notified that said judgments must be paid. Collection of these judgments was deferred until September 6, 1929, when the surety made payment and the judgments were satisfied.

On October 21, 1929, the defendants were surrendered and rearrested as fugitives from justice. Upon arraignment on that day, respondent again furnished bail bonds, in the amount of $5,000 for each defendant, for their appearance upon trials set for November 6, 1929. An adjournment was obtained by defendants and the trial was put over to November 13, 1929, on which date defendants' application for a further adjournment was refused and, defendants having failed to appear, each of the $5,000 bonds was duly declared forfeited and judgments were entered on these forfeitures on November 14, 1929.

On November 27, 1929, respondent moved to vacate the forfeitures of November 14, 1929, apparently on the ground that inasmuch as the first forfeitures had been paid, there could not be collection of the second forfeitures in a criminal action where the charge was the same as that in which the first forfeiture occurred. This motion was denied and respondent having appealed from that order, withdrew the appeal.

In the meantime, respondent moved to vacate the forfeitures declared on the first recognizances and to direct the comptroller of the city of New York to refund the amounts paid in satisfaction of the two judgments entered thereon. From the order granting that motion the present appeal was taken.

Neither defendant has been tried. Both are still fugitives from justice.

There is no question presented as to the propriety of the declarations of forfeitures or the entry of the judgments thereon under the provisions of sections 593–595 of the Code of Criminal Procedure, and of section 1480 of the New York City Consolidation Act.

In *People* v. *Bennett* (136 N. Y. 482) the court said (p. 487): " If the principal makes default and his non-appearance is entered in the minutes, the recognizance becomes *ipso facto* forfeited.

No further or formal order is necessary to fix the liability of the surety. His obligation to pay the amount of the bail then accrues and becomes absolute upon the record, and so continues until the surety is relieved or exonerated by the action of the court or in some other lawful manner. The subsequent surrender of the principal does not of itself work an exoneration. It may be considered and have its proper weight in an application for relief addressed to the favor of the court."

In refusing the relief sought by the surety in that case, the court further stated (p. 488): " An arrest of the principal upon a bench warrant, and his discharge upon entering into another recognizance to appear and answer to the charge, which he kept, is no defense to an action on the first."

The remission of bail forfeiture is governed by statute; and the surety may not claim relief as a matter of right. (Code Crim. Proc. §§ 597, 598; New York City Consol. Act, §§ 1482–1484.)

The practice requires the surety seeking remission of the forfeiture to apply to the district attorney for a certificate that the People have lost no rights by reason of the failure of the surety to produce his principal in compliance with the bond. No such certificate has been obtained, nor is it claimed that the district attorney arbitrarily refused to grant one. Had such an application been made by the surety, the district attorney would, in all probability, have been bound to refuse to issue it, because defendants are still fugitives. In applications of this kind the rules laid down by this court in *People* v. *Levy* (169 App. Div. 571, 573) apply: " *First,* that in the absence of such a certificate the applicant must affirmatively show that the People, in fact, lost nothing by the surety's failure to produce his principal; *second,* that the mere fact that after a fugitive is captured or surrenders, he is acquitted upon trial does not of itself prove that the People lost nothing; *third,* that after a judgment has been collected, or cash bail has been paid over to the comptroller in satisfaction of the judgment and mingled with the city's funds, it cannot be summarily ordered to be paid back."

In *People* v. *Heit* (152 App. Div. 179), in reversing an order remitting a bail forfeiture, Mr. Justice Rich said: " I have been unable to find a reported case where a forfeiture has been remitted where the accused was not in custody and produced, but assuming without deciding that the discretion vested in the court by sections 597 and 598 of the Code of Criminal Procedure may be properly exercised although the accused is not surrendered and is still at large, such discretion should not be exercised except in cases of extreme hardship." The fact that the surety can ill afford to lose

the amount, where the defendant defaulted, is not a sufficient ground.

The facts here do not present a case in which the hardship of the surety (as in causes where the enforcement of the forfeiture might result in causing privation to the surety or his family) is of weight.

Respondent corporation makes a business of furnishing bail bonds in criminal actions. It made a contract with the People that it would produce the defendants Cohen and Rosen, or pay the amount of the bonds, and that legal obligation must be enforced. In *People* v. *Di Meo* (181 App. Div. 893; appeal dismissed, 224 N. Y. 612) the court said: "An undertaking of bail is a serious contract, and imposes upon the surety the absolute obligation to produce his principal when called for trial. This application should not be granted save under exceptional circumstances. In the present case the surety failed in the discharge of his duty, which is shown by the very fact which he offered as an excuse, namely, that the accused left this country and sailed for Liverpool. It is not shown that the enforcement of the undertaking will impose undue hardship upon the surety or his family, and indeed this is a reason which should be very rarely received. The suggestion that the accused would have been acquitted cannot be considered. That question can only be tried in the criminal courts, and not collaterally on an application to discharge a bail bond."

The respondent voluntarily assumed two distinct obligations as to each defendant. Twice the defendants defaulted by non-appearance. Twice the intervention of this surety has enabled them to become fugitives. While the crime here charged is only petit larceny, these defendants have extensive criminal records.

Defendant Rosen was arrested on February 16, 1913, on a charge " as Lelia Brown " of being a prostitute, convicted in a Magistrates' Court and served five days in the workhouse. On November 8, 1924, she was arrested as " Lucille Brown " in Boston as a suspect, and the record shows no disposition. On March 25, 1925, she was arrested as " Ida Rosen " in Philadelphia as a suspect and discharged. Again on December 4, 1928 (a few days before the information here was filed), she was arrested as " Anna Rosen " in New York city, charged with grand larceny, by detectives of the pickpocket squad.

The defendant Cohen was arrested on June 21, 1919, as " Anna Roman " in New York city, charged with petit larceny, convicted and sentenced to the penitentiary. On September 15, 1919, she was arrested as " Fannie Green " in New York city, charged with grand larceny, and discharged in the Magistrates' Court; on November 6, 1921, as " Gussie Nash " in Philadelphia, upon a charge of

larceny, with notation " Ignored by grand jury." On March 31, 1923, as " Helen Reid " she was apprehended at Philadelphia for larceny, but discharged. On January 17, 1929, while actually a fugitive from justice, after default on the first bond supplied here by respondent a month theretofore, she was arrested as " Fannie Harris " at Cleveland, and on February 5, 1929, was fined fifty dollars and sentenced to serve thirty days. On October 9, 1929, as " Gussie Nash " at Philadelphia, she was charged with shop-lifting, which case is pending. Thus in the exercise of the liberty obtained by means of this bond, she was continuing a career of crime.

Notwithstanding the known criminal activities of these defendants, respondent undertook to enlarge them upon bail. The fact that it has recently paid the second forfeitures has no bearing on this application for relief from the earlier forfeitures. They are the outcome of independent obligations. Moreover, the time within which application for relief from the second forfeitures may be made has not yet expired. If the respondent shall produce the fugitives in the meantime, an application for such relief, when made, can be urged with far better grace; but even then their production will be by no means conclusive, for the surety will still be bound to establish in proper form that the People have lost no rights and that its conduct has been such as to entitle it to relief. We cannot now prejudge that application.

Sureties who engage in the business of supplying bonds to those accused of crime cannot be oblivious of their principals' criminal records; the delays thereby obtained by habitual criminals are frequently the means of defeating justice. It encourages them to ply their criminal occupations, as though the law existed merely to be frustrated. Remission of forfeitures occurring under such circumstances is not favored.

The orders should be reversed, with ten dollars costs and disbursements, and the motions denied, with ten dollars costs.

DOWLING, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

In each case: Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.