THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* CONTINENTAL CASUALTY COMPANY, Surety, Respondent. RAYMOND KNAPP, Principal.

Argued April 13, 1950; decided May 25, 1950.

*Frank S. Hogan, District Attorney* (*Whitman Knapp* and *Jack M. Cotton* of counsel), for appellant. The order below rests upon no sound and substantial basis, and should be reversed. (*People* v. *Rigby,* 293 N. Y. 912; *People* v. *Cohen,* 229 App. Div. 515, 255 N. Y. 530; *People* v. *Parkin,* 263 N. Y. 428.)

*Conn Cohalan* and *Abbie Goldstein* for respondent. The application for remission was properly granted below and the order should be affirmed. Application for release from forfeiture is addressed to the discretion of the court, and the affirmance by the Appellate Division leaves no arguable question for the Court of Appeals. (*People* v. *Phelan,* 219 App.

Div. 80; *People* v. *Parkin,* 263 N. Y. 428; *Matter of Attorney-General [Olyphant],* 155 N. Y. 441; *Middleton* v. *Boardman,* 240 N. Y. 552; *Matter of People [Second Russian Ins. Co.],* 244 N. Y. 606; *Sherlock* v. *Manwaren,* 208 App. Div. 538.)

CONWAY, J. There is presented to us by this appeal the question whether the facts submitted to Special Term on the motion made to it for the remission of the forfeiture of bail of one Knapp permitted the exercise of any discretion in favor of the corporate surety.

Knapp and two others, Carroll and Smith, had been indicted for the crimes of extortion, grand larceny in the first degree, attempted extortion, attempted grand larceny in the second degree and personating public officer. Thereafter Knapp was admitted to bail on a recognizance conditioned in the sum of $3,500. The case was set for trial for April 19, 1948. On that day, the assistant district attorney asked that the bail of all three defendants be increased. He said:

" It appears that two of the defendants have very long criminal records; one has been convicted four times in matters arising out of his posing as an officer and he may be a second or third felony offender. Another defendant is a second felony offender and has a number of arrests and minor convictions; and the third defendant has just one conviction for the possession of a gun, in 1934 — that is Carroll.

" In view of the immediacy of the situation, the possibility that the matter will be reached shortly and the fact that there has been a good deal of investigation and additional evidence turned up which was not known at the time of the original bail fixing, it is my recommendation that bail be raised to $10,000."

The Trial Judge then presiding, after hearing argument, denied the motion and, after questioning each of the defendants and warning them as to the consequences of a failure to appear, adjourned the case for trial to April 21st, two days later. The adjournment was due to the inability of counsel for Knapp to be present in court that day as he was on his way back from Mexico.

On April 21st, the People and the codefendants of Knapp were ready for trial, but he did not appear. His counsel, who had returned, told the court that he had talked to Knapp on the day before and that Knapp had said that he would be in court

at ten o'clock. After the " second call " of the calendar, Knapp still being absent, the court forfeited his bail, ordered the issuance of a bench warrant and adjourned the case to the following day, April 22d. On such adjourned day, Knapp still absenting himself, the trial was adjourned until the following Monday, April 26th. The minutes of Part III of the Court of General Sessions for the 21st and 22d days of April, to which our attention has been called in the brief of the District Attorney and of which we take judicial notice, disclose that no other case was ready for trial and that the court adjourned after disposing of one plea of guilt and one sentence.

On April 26th, the court directed the entry of judgment of forfeiture. In truth Knapp had departed for Cuba under an assumed name on April 21st, without collecting his wages, and nothing further was heard from him until May 23d when he surrendered. On May 24th Knapp pleaded guilty to three of the five counts in the indictment referred to above. He was thereafter indicted for jumping bail (Penal Law, § 1694-a). On his plea of guilt to that crime he was sentenced to a term of not less than one year nor more than two years to be served after he had first served a term in State prison of not less than five nor more than six years upon his plea of guilty to the count of attempted extortion in the indictment. Prior to the imposition of those sentences, the defendant had admitted, after information filed, that he had been previously convicted of a felony.

After Knapp had been sentenced the surety submitted to the District Attorney affidavits of Knapp, which is hereinafter referred to, and of its attorney in fact, both sworn to in September of 1948, " for the purpose of securing a certificate to the effect that the People have lost no rights." Such a certificate was refused. The certificate referred to was provided for in sections 1482 and 1483 of the New York City Consolidation Act (L. 1882, ch. 410). As we pointed out in *People* v. *Parkin* (263 N. Y. 428, 432–433), those sections required a certificate of the District Attorney that the People of the State of New York had lost no rights by reason of the failure of a surety to produce a principal in compliance with the terms of a recognizance given by it and that, by reason of the principal being later produced, the People of the State of New York were in as good a position to prosecute the principal as when such

failure occurred. Thereafter the surety moved at Special Term, New York County, for an order remitting the forfeiture of the recognizance executed by it and the return of the $3,500 theretofore paid by it to the comptroller of the city of New York in satisfaction of the judgment.

Special Term, in granting the motion, did so upon the ground that the District Attorney had failed to show " that the People have lost any rights as the result of the nonappearance of the principal * * *."

The present effectiveness of sections 1482 and 1483 of the New York City Consolidation Act has apparently never been questioned in this or any other court. We are constrained to hold, however, that those sections were specifically repealed by section 2a of chapter 929 of the Laws of 1937, which reads as follows: " Of the laws enumerated in the schedule hereto annexed, that portion specified in the last column is hereby repealed." There follows: " SCHEDULE OF LAWS REPEALED ". In the last column opposite the Laws of 1882, chapter 410 (New York City Consolidation Act) there appear the words, " All, except * * *." The sections excepted do not include sections 1482 and 1483. However despite the repeal, it is still necessary to reverse here since the court was incorrect in holding that the burden was on the District Attorney " to show that the People have lost any rights as the result of the nonappearance of the principal * * *." The burden has always been upon the surety to show affirmatively that the People, in fact, lost nothing by the surety's failure to produce his principal (*People* v. *Levy*, 169 App. Div. 571; *People* v. *Handel*, 238 App. Div. 596).

We treat the application here as made under sections 597 and 598 of the Code of Criminal Procedure, which have State-wide application.

Section 597 reads as follows: " *Remission of forfeiture.* After the forfeiture of the undertaking or deposit, as provided in this article, the court directing the forfeiture, the county court of the county, or in the city of New York, the supreme court may remit the forfeiture or any part thereof, upon such terms as are just."

In determining whether there was any room here for the exercise of discretion in favor of the surety, we search the

record to see whether there is any evidence to show that Knapp's failure to appear was other than deliberate and willful. If there be none, then the rights of the People of the State of New York were harmed and prejudiced. There is no evidence in this record which would satisfy a reasonable man that the flight of Knapp to Cuba, under an assumed name, was other than willful. This is made abundantly clear by the affidavit of the lawyer who shared an office with the one who wrote, on behalf of the surety, the recognizance for Knapp. This affidavit was submitted on behalf of the surety and it discloses that the affiant " caused investigations to be made as to Knapp's whereabouts to no avail " until May 23d, more than a month after the forfeiture. On the day of his return he was questioned by the District Attorney and stated that while he had told his lawyer on April 20th that he would be in court the following day, he was visited about midnight at the dock where he worked by an undisclosed friend and was told by him that his trial was to be adjourned indefinitely; that without communicating with his attorney or family, he left for Poughkeepsie to see about the purchase of some land there; that he remained in the vicinity of Poughkeepsie until his return to New York City on May 22, 1948; that while there he never communicated with his wife, his family, his attorney or any one else. It was discovered that those statements were false and that on the contrary Knapp, using a name other than his own, had boarded a plane of the Pan American Airways, at Miami, Florida, at 3:20 P.M. of the afternoon of April 21st bound for Havana, Cuba and that he returned from Miami to New York on May 22, 1948. Approximately four months after his surrender, in September, 1948, he made an affidavit, which is printed in the record, in which he stated that on the 19th of April, his codefendant Carroll told him he would be further advised of the date of his trial since Carroll was planning to change his counsel and that counsel said the case would be adjourned for one month; that thereupon he left for Cuba on business and did not know that his bail had been forfeited until his return on May 22d. No affidavit of Carroll nor of any counsel for either Knapp or Carroll was submitted to support this new story.

We now consider one of the rights the District Attorney and thus the People have with respect to a criminal prosecution

by indictment in New York County. In that county, the District Attorney has control of his calendar. He selects the term of the court and the day on which an indictment is to be tried. That is his right and by long experience has been found to be an important one for the protection of the community. (See New York City Consolidation Act, § 1537; L. 1922, ch. 489, repealed by L. 1939, ch. 661.)

The case of Knapp and his two codefendants during the month of April had been on the trial calendar of one of the judges of the Court of General Sessions. The flight of Knapp put the case over the April term so that he surrendered and was sentenced before a different judge. His codefendants were tried at a later term before a judge other than the one presiding in April and before jurors drawn for a term other than the one at which their trial had been originally set by the District Attorney. We were told on the argument that one of those codefendants had been acquitted.

The fact that Knapp voluntarily returned and pleaded guilty to three of the five counts of the indictment and in addition pleaded guilty to jumping bail does not in and of itself establish that the People lost no rights or that the cause of justice would be served by the remission of the forfeiture. We think that the rights of the People were impaired and delayed by Knapp's deliberate failure to appear on April 21st, on April 22d and again on April 26th for trial before the judge then presiding in Part III to be tried before the panel of jurors drawn in accordance with the statutory requirements for the Court of General Sessions for the month of April. The People have a vital interest in having indictments disposed of promptly and the right to have cases tried on the date set by their elected representatives. A person charged with crime may not be permitted to absent himself deliberately at the time set for trial for any reason which seems desirable to him, then plead guilty at a later self-selected time and assert that the People have lost no rights since he pleaded guilty and was sentenced to a State prison. His surety occupies no better position. Knapp's conduct embarrassed and obstructed the court in the administration of justice and tended to bring the administration of the law into disrespect if not into disrepute (*People* v. *Glass*, 275 App. Div. 851). Our criminal courts are managed and justice is admin-

istered as to indictments for felony filed therein by duly elected public officials and by citizens drawn for jury duty as provided by statute and not by those accused of the commission of crime. To say here that the District Attorney lost no right or that justice would be served by the remission of the forfeiture, regardless of the delay in the administration of justice caused by Knapp, would be to invite the rejection by a defendant of a particular panel of jurors. It might also invite flight in order that a defendant could secure more time to have a complainant or a witness intimidated or corrupted.

The surety here insured for profit against a calculated peril and suffered a loss. It has paid according to its recognizance and there are no " exceptional circumstances " here within the rule of *People* v. *Parkin* (263 N. Y. 428, 431–432, *supra*). There we said: " An application for the remission of the forfeiture was made under sections 597 and 598 of the Code of Criminal Procedure. An application for the granting of such relief is addressed to the discretion of the court and should be exercised only under exceptional circumstances and to promote the ends of justice." (See, also, *People* v. *Rigby*, 293 N. Y. 912.)

The orders of the courts below should be reversed and the motion denied, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Orders reversed, etc.