Matthew M. Levy, J.
Prior to October, 1940, the petitioner was an assistant court clerk in the Municipal Court of the City of New York. He was also a member of the New York National Guard. Between October 15, 1940 and October 31, 1941, he was in the active military service in the National Guard, and, on termination of that service, he returned to the Municipal Court, as deputy clerk of court. On January 24, 1942, he returned to active military service in the National Guard, as a sergeant, and, on August 1, 1942, he became a first lieutenant in the United States Army Reserve, on active duty. There, on October 9, 1945, he was promoted to a captaincy, and on October 10, 1948, he was promoted to Major. On each change of position in the armed forces, he filed an oath of office in the usual form, accepting his promotion. On August 31,1955, he was separated from the army reserve, being honorably discharged as a disabled veteran, with a total credit of 33 years of military service. He was then, on ¡September 1, 1955, restored to his position as deputy clerk in the Municipal Court.
On May 6, 1947, a competitive examination for promotion was held for certain clerkship vacancies in the Municipal Court, and a list of eligibles was established on January 28, 1948. On December 28, 1952, another similar examination was held and another list was made on June 3, 1953. The petitioner was eligible to take such examinations, but he did not do so because of his being in the military service. Subdivision 5 of section 243 [formerly § 246J of the Military Law makes provision for such a situation, providing in part: “ If a promotion examination is held while a public employee entitled to participate therein is on military duty, such public employee shall be given *645 a comparable examination, provided he makes request therefor within sixty days after restoration to his position.” The petitioner duly made such a request upon his discharge and when he returned to his duties as deputy clerk. He was accorded permission to take the examination. The petitioner passed, and, pursuant to subdivision 5 of section 243, his name was placed on two special eligible lists, dated retroactive to the dates of the two regular eligible lists which had been established as a result of the examinations which the petitioner had been prevented from taking by his being on military duty. The dates of the two special lists are January 28, 1948, and June 3, 1953, respectively. On the first list, the petitioner was credited with a grade of 76.25, which was the grade he had actually attained on the examination; he was also given “ absolute preference ” on this list, pursuant to the provisions of section 6 of article V of the Constitution as it read in 1948. On the second list, he was granted five points additional credit, pursuant to the new section 6 of article V of the Constitution, effective January 1, 1950, the grade given the petitioner being 81.25. The petitioner’s name was the only one appearing on each of these eligible lists. In addition to these two lists, there was also a regular promotion eligible list for clerk of District Court, as of June 3, 1953, on which list the petitioner was also placed. There he stood first, with a grade of 81.25, achieved on the special military comparable examination referred to. The respondent Joslin "was sixth on this list of seven. The petitioner was placed on all of these lists on October 22,1956. In February, 1957, a vacancy occurred for clerk of District Court, in the Fifth District, Manhattan, of the Municipal Court. The other eligibles on the last list declined appointment, except the petitioner and the respondent Joslin, who was given the position. Whereupon, the petitioner instituted this proceeding, in pursuance of article 78 of the Civil Practice Act, to vacate Joslin’s appointment and to compel the appointment of the petitioner.
At this point, I think it appropriate to dispose of the doubt sought to be cast, by certain of the respondents upon the jurisdiction of the court to entertain the proceeding in that it is claimed that the court has no power to grant the relief requested. The answer is short and simple. Although it is true that the court may not direct appointment (Turel v. Delaney, 287 N. Y. 15), the court may require compliance with the law in the matter of appointments (Hurley v. Board of Educ. of City of N. Y., 270 N. Y. 275). This is self-evident, for, otherwise, the law would be rendered nugatory for want of means of enforcement. A careful reading of the cases cited by the objecting respondents *646 shows that the courts refused to issue mandamus where the appointments, duly made, were in the discretion of the appointing authorities. If the appointment here in issue were solely in the discretion of the respondents Justices of the Municipal Court, the appointing authority, clearly a mandamus could not issue (Matter of Delicati v. Schechter, 3 A D 2d 19). If, however, these respondents were bound by law to appoint the petitioner and had unlawfully appointed the respondent Joslin, this proceeding is the proper remedy and this court has jurisdiction to grant the relief prayed for (Matter of Smith v. Dillon, 267 App. Div. 39; see, also, Matter of Winkle v. Adams, 4 Misc 2d 441, 445-447).
It would, I think, be well, too, to dispose at the outset of the two issues of fact sought to be presented in this proceeding:
(1) As has been hereinbefore noted, subdivision 5 of section 243 of the Military Law provides that if a veteran wishes upon reinstatement to take an examination comparable to one held while he was on military duty, he must make a “ request therefor within sixty days after restoration to his position.” The respondents Municipal Court Justices, in support of their appointment of Joslin, assert that the petitioner did not satisfy this requirement and they demand proof of compliance. It is my opinion that, on the present state of the record, there has been an adequate showing thereon, and that the petitioner is not to be burdened with the submission of any further evidence. According to the respondents Department of Personnel and Civil Service Commission of the City of New York, the petitioner was restored to his position on September 1, 1955, and filed an application for the examination on October 31, 1955. This was the sixtieth day, and, therefore, timely (see General Construction Law, § 20). The petitioner’s request for a comparable examination was considered and granted by the official authorities having jurisdiction. Such action is clothed with a presumption of regularity (Matter of Marcellus, 165 N. Y. 70, 77). Regularity, in this instance, includes presumed compliance with subdivision 5 of section 243 of the Military Law. If the respondents Justices of the Municipal Court as the appointing authority and the respondent Joslin as their appointee wish to rebut the presumption, it is they who have the burden of producing substantial contrary evidence (People ex rel. Wallington Apts. v. Miller, 288 N. Y. 31, 33). What they have done, however, is merely to interpose a claim of no finding at all. That is obviously not the substantial contrary evidence needed to upset the presumption.
*647 (2) The other issue of fact is sought to be raised by the respondent Joslin by denying that the petitioner is truly a disabled veteran. As to that, once again, a denial without more does not raise an issue of sufficient factual controversy to require a hearing. The petitioner’s official certificate specifies that he was discharged from the armed services as a disabled veteran. On the state of this record, that is presumed to be the fact. (See Military Law, § 243, subd. 17.)*
I proceed, therefore, to a consideration of the question as to whether, in the light of the Constitution and the laws, the petitioner was entitled, as a matter of right, to the appointment denied him.
On this issue, I shall first consider the legal propriety of the certification of the petitioner’s name on any of the three eligible lists for promotion. That depends in part on the meaning of the last sentence of paragraph (b) of subdivision 1 of section 243 of the Military Law which implemented section 6 of article V of the State Constitution, as it read prior to January 1, 1950, and subsequent thereto, and which sets forth the nature of veterans’ preferences in the civil service, as they varied from time to time. That section of the Military Law at first defines “military duty” in respect of public employees absent therefor, and then the pertinent part thereof, in the last sentence, reads: “ Notwithstanding the foregoing provisions of this paragraph, the term ‘ military duty ’ shall not include any of the foregoing services entered upon voluntarily on or after January first, nineteen hundred forty-seven and before June twenty-fifth, nineteen hundred fifty. ’ ’ (Emphasis added.)
The respondents Municipal Court Justices and the respondent Joslin argue that, by remaining in the army beyond the time that he could have resigned therefrom, the petitioner thereby waived his rights under subdivision 5 of section 243 of the Military Law. Therefore, say they, the petitioner has no right to a place on any list, and cannot be heard to complain in the matter of appointments. I am not persuaded that either the premise or the reasoning upon which this argument is *648 grounded has merit. Admittedly, the petitioner could have applied at any time to leave the military service, but, while the authorities were not cited to me, I find on independent research that the petitioner was not entitled as a matter of right to a discharge during the crucial period — January 1, 1947 to June 25,1950 (cf. Miley v. Marshall, 100 F. Supp. 1012, affd. sub. nom. Miley v. Lovett, 193 F. 2d 712, cert, denied 342 U. S. 919). The statute provided that “ [a] reserve officer appointed during the existence of a state of war shall be entitled to discharge within six months after its termination if he makes application therefor.” (U. S. Code, tit. 10, § 358, codified in 1956 to U. S. Code, tit. 10, § 3492.) World War II began December 8,1941 (55 U. S. Stat. 795, ch. 561) and hostilities were proclaimed to have ceased on December 31, 1946 (Proclamation No. 2714, 61 U. S. Stat. 1048). Despite the cessation of hostilities, the state of war against G-ermany did not terminate until October 19, 1951 (Proclamation No. 2950, U. S. Stat. c 3), and the state of war with Japan continued until April 28, 1952 (Proclamation No. 2974, 66 U. S. Stat. c 31), the date on which our ratification of the Japanese peace treaty entered into force (U. S. Treaties and Other International Agreements, 1952, Vol. 3, part 3, p. 3169). Thus, World War II did not officially terminate until April 28, 1952. By this time, the Korean conflict had commenced (Proclamation No. 2914, dated Dec. 16, 1950, 64 U. S. Stat, a 454; cf., as to dates, U. S. Code, tit. 38, § 101, subd. [9]; Civil Service Law, § 21, subd. 1, par. [c], cl. [5]) and the military service of reserve officers was further extended (66 U. S. Stat. 330, ch. 570). The Federal Government could, of course, have released the petitioner from military duty if it found that his services were superfluous, or it could have granted his application for release if a request therefor were made by him. But the petitioner did not apply for discharge, and the Army apparently had sufficient need for his services so that it did not seek his discharge.
The contesting respondents urge that since, by Federal law, the petitioner had the undoubted right to make application to be relieved from active service during the period between January 1, 1947 and June 25, 1950, and to seek to effectuate a severance from military service accordingly, and nevertheless did not do so, he must be deemed to have “ entered upon [such continued service] voluntarily” within the meaning of the statute. The construction thus urged upon me by these respondents is patently strained. The language of the statute is ‘! entered upon ’ The statute makes no mention of ‘ ‘ remaining in ” or of “ continuance in ”, the connotations relied upon *649 by these respondents. Clearly, if words are to have any meaning, the phrases invoked by these respondents cannot be deemed to l)e synonymous with the phrase used by the Legislature.
I think that the Legislature knew the difference between “ entering ” into the military service and 11 continuing ’ ’ or “ remaining ” in the military service. As I see it, it is plain that the Legislature had no intention of compelling reserve officers to make application to be relieved from active duty and to return to their civil service, so long as the armed forces could use their military service. In my view, therefore, the statute means that a civil servant who voluntarily enters — not one who remains or continues in — the armed forces, after January 1, 1947 and before June 25, 1950, is not entitled to the privileges set forth in section 6 of article V of the Constitution, nor in the Military Law, upon restoration to the civil service. “ Entered upon voluntarily ” can have no other effect but this: that if a public employee leaves the public service on or after January 1, 1947 and before June 25, 1950, in order voluntarily to join the armed services, he is deemed to have completely severed himself from the public employ, and will be regarded as a stranger if he thereafter presents himself for re-employment. The petitioner cannot be, and, indeed, was not, so considered. The respondents Municipal Court Justices allege in their answer that “ subsequent to petitioner’s discharge [from the military service] said petitioner was certified for the same position of Clerk of District [Court] in Bronx County but said petitioner declined this promotional appointment ”. The matter of acceptance or declination was within the petitioner’s province, without prejudice to such rights as he may have to the desired appointment as clerk of District Court in Fifth District, Manhattan. But it is mentioned here as further proof of the commission’s and of the Municipal Court’s recognition that the petitioner had been duly reinstated to his post as deputy clerk and that he was entitled to seek promotion as a civil service employee in good standing in that post.
The contesting respondents urge, further, that the petitioner lost his right to any veteran’s preference for promotion in the civil service by reason of the fact that he remained in the military service with the intent of making it his career, and that by so doing he resigned in fact or by implication from the civil service. Actual, formal resignation there was not. The objecting respondents say, however, that intention to resign can be inferred, because the petitioner could, upon application after January 1, 1947, have been honorably discharged from the military forces and could have resumed his civilian position. In *650 effect, these respondents contend that the petitioner’s failure to take affirmative action to be released from the military service constitutes an intention to resign from his post in the Municipal Court.
In support of their contention that the petitioner’s remaining in the military service effected a resignation, or resignation by implication, from the civil service, the respondents rely upon two cases. The cases do not support the argument advanced. In Matter of Smith v. Dillon (267 App. Div. 39) it was held that resignation by implication occurs when one in the civil service accepts and qualifies for a second and incompatible job in the civil service. And Wardlaw v. Mayor, Aldermen & Commonalty of the City of N. Y. (137 N. Y. 194) is to the same effect. The issues resolved there bear no similarity to those in the instant proceeding. The new civil service posts undertaken in the cases cited were not engaged in by the respective employees under a protective umbrella such as that afforded the present petitioner by the provisions of the Constitution and the statute. In the circumstances of the legal background in the case at bar, it would, I think, be doing violence to legislative policy in the premises were I to hold that, notwithstanding the legal justification for the petitioner’s continuing in the military service without prescribed penalty for so doing, there was forfeiture, nonetheless, of his civil service status. The Legislature could have provided that such status would be lost if a civil servant remained in the military service a certain number of years. That it did not do. Nor may I.
The brief of the respondent Joslin concedes that, on the petitioner’s appointment as captain in the military reserves, which took place on October 9, 1945, the petitioner’s term as a reserve officer was extended to October 9, 1950. There could be no valid claim — and no contention is made — by the objecting respondents, that on October 10, 1948, when the petitioner was promoted to Major in the reserves, he thereby extended his term of military service. So that whatever extensions in that service the petitioner took as a reserve officer were either before January 1, 1947, or after June 25, 1950, the dates of cleavage prescribed in the statute. That, the petitioner was entitled to do without losing any of his rights on restoration to the civil service, and such extensions of service in the military reserves did not constitute a resignation from his civil service position as deputy clerk of the Municipal Court.
The respondents Justices of the Municipal Court were the appointing authority which had jurisdiction to deny restoration to the petitioner to the position he had at the time of the claimed *651 resignation therefrom, when, in 1955, he returned from the military service and asked to be restored to the civil service (N. Y. City Mun. Ct. Code, § 7-a, subd. 1). These respondents restored the petitioner to his civil service position, and, in now urging that he had resigned from the civil service, they overlook their prior official determination. If the petitioner’s failure to take active steps to be released from military duty is tantamount to a resignation from the civil service, he was not entitled to restoration at all. It was when the petitioner requested reinstatement that the question should have been raised of his intention to make a career in the armed forces, and of his presumed resignation from the civil service; if that were found to have been the situation, these respondents should then have refused to restore him to the position of deputy clerk upon the ground that his conduct had amounted to a resignation from the civil service. If restored, that assured the petitioner an opportunity to strive for promotion with whatever advantage he may be afforded by virtue of his having been in the military service. It did not mean that he was to be frozen in his old job, whatever his merit, and that his having been a veteran (and therefore entitled to certain preferences when seeking promotion) was to be ignored. Without this prior restoration to his status as deputy clerk, the petitioner could not have been permitted to take the examinations and be put on the eligible lists for promotion. The petitioner’s alleged intention to resign from the civil service is a question of fact. The appointing authority having once resolved that question in the petitioner’s favor, it is not for me to entertain the question anew, even though the appointing authority have changed their position.
My conclusion is, therefore, that, within constitutionally permissible areas, the petitioner is protected by the provisions of section 243 of the Military Law, and the matter of the certification of his name on the several eligible lists must be viewed in this light. And, now, I come to the applicable provisions of the Constitution.
In 1948, as of which date the first special military list above referred to was established, section 6 of article Y of the Constitution read as follows: “ Appointments and promotions in the civil service * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; provided, however, that any [honorably discharged, disabled, New York] member of the armed forces of the United States who served therein in time of war # * * shall be entitled to preference and shall be appointed or promoted before any *652 other appointments or promotions are made, without regard to his or her standing on any list from which such appointment or promotion may be made Effective as of January 1, 1950, this absolute preference for disabled veterans was constitutionally changed by the adoption of a new section 6 of article V. After again requiring that appointment and promotion in the civil service be made in pursuance of examination as previously specified, the following significant language has been substituted for the former proviso clause: ‘ ‘ provided, however, that until” January 1, 1951, any qualifying veteran “ shall be entitled to the preferences granted by the provisions of former section six of this article, which shall continue in effect until such date, notwithstanding its repeal by the concurrent ■ resolution * * # adding this section, and provided, further, that on and after such date, any such member [disabled or not, as the case may be] shall, in lieu of such preferences, be entitled to receive [certain points] additional credit in * * * an examination for promotion * * *. Such additional credit shall be added to the final earned rating of such member after he or she has qualified in an examination and shall be granted only at the time of establishment of an eligible list, except that eligible lists in existence on [January 1, 1951] shall be revised by adding the applicable credits provided herein for such members of the armed forces
The petitioner claims that, under the provisions of the Constitution, he is entitled to an “ absolute preference ”, relying specifically upon the special military list of 1948 which accorded him that preference. The petitioner further presents the question as to whether, in respect of the appointment of the respondent Joslin from the third, or regular, promotion list, the procedure followed by the respondents Municipal Court Justices in making the appointment attacked was in accordance with the requirements of the applicable law.
As. to the first list, promulgated January 27, 1948, the petitioner contends that he had “ a veteran’s absolute preference ” by virtue of the constitutional provision as it then existed, and further that, by virtue of section 243 of the Military Law, his constitutional rights “ vested ” as of the time of the establishment of that list, subject only to the condition that he pass a comparable examination upon his reinstatement to public employment, which he did in 1955. With this argument, I do not agree.
It is “ [t]he Constitution [that] circumscribes the field of privilege and favor” (Oardozo, J., in Matter of Barthelmess v. Cukor, 231 N. Y. 435, 441), and that field is always subject to *653 due constitutional delimitation. The Constitution is the definitive voice of the people, who, in a democracy, are clothed with supreme sovereignty within the framework of that Constitution. When the petitioner became a civil servant and when he entered the military service, the people did not thereby enter into an irrevocable compact with him that, insofar as any preference then afforded to him by the Constitution was concerned, that preference was an impregnable privilege forever to remain untouchable, notwithstanding the duly expressed will of the people. There was no commitment by the sovereign people that the privilege was forever to remain immune from constitutional change or repeal. T hold that the right to absolute preference for veterans existed solely because of express constitutional grant and ceased to exist the moment the grant was constitutionally withdrawn.
The new section 6 of article V of the Constitution, which took effect in 1950, granted a veteran certain points “ additional credit ”, “ in lieu of such [former absolute] preferences ”. All former preferences were abolished beyond 1950, and absolute preferences for veterans were eliminated. After that date, a veteran discharged from military service had a right only to the additional credits granted by the new section. And, by the very words of the new section itself, “ eligible lists in existence on [January 1, 1951] shall be revised by adding the applicable credits provided [t] herein for such ” veterans. I conclude, therefore, that the “ absolute veteran’s preference ” sought to be established in the petitioner’s favor by the certification of the first, or 1948, list was void.
The issue here decided was neither raised nor determined in the two cases cited by the petitioner to support the contention made by him to the contrary of my holding. In Matter of Farrell v. Watson (279 App. Div. 376, affd. 304 N. Y. 630) the court held that the petitioners were entitled to be placed on a special military list on the basis of a comparable examination given to them in 1950, the earlier examination in respect of which they had missed because of their being on active duty, and which comparable examination the petitioners took at a time when the Constitution granted an absolute preference, not extra credit. In Matter of McQuillan v. Schechter (309 N. Y. 15) the petitioners were unlawfully refused an examination in 1947, when absolute preferences ^ were still in effect, and so here, too, constitutional rights had already accrued to the petitioners before the 1950 repeal, and all that the court was doing was enforcing those rights. In the case at bar, the petitioner had only the right, granted by statute, to apply for a comparable *654 promotion examination upon discharge. Any other rights, given by the Constitution, followed only if the petitioner took such examination. Since the examination was taken when it was — in 1955 — all that the petitioner could get under the then existing Constitution was extra points. These have been accorded him in full.
The next list to be considered is that promulgated June 3, 1953, the second special military list. On that list, the petitioner was alone. While the certification of this list was valid, I hold that it was not mandatory that the appointing authority abide by it.
It has long since been decided that a civil service appointing authority may not (unless otherwise provided in the Constitution) be deprived by statute of its discretion in the matter of appointments. In People ex rel. Balcom v. Mosher (163 N. Y. 32) it was held that the provision of the then civil service statute (L. 1899, ch. 370, § 13), making it mandatory that appointments be made only of those graded highest in open competitive examinations, was unconstitutional, in part, because it deprived the appointing authorities of discretion in making appointments. Thus it is that section 14 of the Civil Service Law provides that “ [appointments shall be made * *** * from among those graded highest in open competitive examinations ”, with the word ‘ ‘ among ’ ’ saving both the discretion of the appointing authority and the constitutionality of the statute (1907 Report of Board of Statutory Consolidation, p. 473). In pursuance of this section, the Rules * of the City Civil Service Commission provide in part:
“ The Director shall upon receiving a request from an appointing officer for the certification of eligibles for a vacant position certify from the eligible list for that position * * * the three names at the head of such list.” (Rule V, § VII, subd. 1.)
“ The appointing officer shall make selection from the three names certified, unless objection shall be made and sustained by the Director, to one or more of the persons named under Section VII of Rule III,** in which case the certification of three names shall be completed by the addition of the name or names next following upon the eligible list.” (Rule V, § VIII, subd. 2, par. [a].)
*655 It will be noticed from the foregoing rules that the general prescription of section 14 of the Civil Service Law, that the appointment is to be made ‘ ‘ from among those graded highest ”, has been concretized by the rules into “ from among the three highest.” The discretion of the appointing authority is not infringed upon by confinement of choice to the three highest. The necessity for a permissible choice in the appointing authority has been deemed satisfied by the certification of at least three names, and if there are less than three names certified on the list, the appointing authority could demand a new list (Matter of Holt v. Jansen, 127 N. Y. S. 2d 671, 676-677, affd. 283 App. Div. 796, motion for leave to appeal to Court of Appeals denied 283 App. Div. 815; see, also, 1921 Atty. Gen. 149, 157). Since the petitioner’s name was the only one appearing on the second list, the appointing authority had the power to disregard it completely, and demand a new list, if they so wished. As a consequence, the petitioner has no valid complaint for failure of appointment on the basis of the second list.
We are brought, then, to the third, or regular, promotion list. That list was also established in 1953. I have no doubt that the placing of the petitioner’s name on this list was proper, even though subdivision 5 of section 243 of the Military Law makes no specific mention of. the placing of a veteran’s name on a regular list, but only on “ special ” lists. Were I to hold otherwise, the ‘1 special ’ ’ character of the treatment required to be accorded a disabled veteran under the Constitution could conceivably (and would in this case) place the veteran at a disadvantage in that his name might appear only on lists of less than three names. Such could not, it seems to me, have been the intent of the Legislature, since its discretion, as pointed out by Judge Lehman for the Court of Appeals in Hurley v. Board of Educ. of City of N. Y. (270 N. Y. 275, 279, supra) “ is limited to the field of the enforcement of that section [art. V, § 6] ot the Constitution.” (Emphasis added.) Frustration is not a method of enforcement, and it is, of course, the latter mandate which is expressed in the Constitution.* To apply what Mr. Justice Frankfurter said for the United States Supreme Court in another connection, the constitutional preference guaranteed disabled veterans has as “ [i]ts very important but limited purpose [the assurance] that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because *656 of his absence in the military service ” (McKinney v. Missouri-Kansas-Texas R. R. Co., 357 U. S. 265, 272). Denial there would or might he if the returning serviceman were limited to being placed upon a special military list, and not upon a regular promotion list.
The petitioner was at the head of this regular promotion list. The respondent Joslin placed sixth. The four intervening persons on the list submitted written declinations for the position. What is the effect of such declinations? The Rules of the City Civil Service Commission provide for certification of additional names in case of declination:
“ On notification from an appointing officer that a person named in a certification has declined appointment, and on receipt, from such officer of such declination in writing, or of evidence of the failure of such person to respond to a notice properly sent, such certification shall be completed by the addition of the name of the eligible next in order.” (Rule V, § VII, subd. 5.)
“ If there he more than one vacancy to be filled, or if the Director has reason to anticipate declinations, he may supplement the certification for the first selection by the addition of the names of those next in order on the list; provided that selection shall be made singly and in each case from the three highest names remaining eligible and those only who have been actually entitled to consideration for selection shall be credited with certification.” (Rule V, § VIII, subd. 2, par. [b.].)
According to the rules, since the petitioner and the respondent Joslin were the only remaining interested eligibles, the appoint:ug authority, in their discretion, upon due certification by the jommission, could make their choice, and the petitioner cannot complain that he was not chosen (Matter of Delicati v. Schechter, 3 A D 2d 19). Vis-a-vis the petitioner the list was not made defective or inadequate by the fact that only two names remained, his and Joslin’s. I do not understand the rules to mean that an eligible can object because the list consists of but two names. If objection there might be in that declinations' have reduced the list to two eligibles (and on this issue it is not now necessary to express an opinion) the right to object would rest solely in the appointing authority.
The final issue remains whether the appointment of the respondent Joslin was made in compliance with the law in respect of the mechanics of civil service appointments. The contention is projected by the petitioner that the appointment *657 is invalid because it was made three days before certification of the eligible list by the Civil Service Commission. I shall assume that, while the petitioner cannot (as I have held) compel his own appointment, he has, by virtue of his standing on the third or regular promotion list, status adequate enough to invoke the remedy afforded him by article 78 of the Civil Practice Act, in respect of the appointment from that list made by the respondents Municipal Court Justices, if the appointment as made did not comply with the applicable law. But I am not convinced that the Joslin appointment was unlawfully made.
True, the record before me shows that the respondent Joslin’s appointment was dated February 15, 1957, and that the certification of the eligible list on which his name appears was not directed to the appointing authority until February 18, 1957. In the circumstances here, I do not deem that to be a fatal defect. The record also shows that, prior to the appointment., the Justices of the Municipal Court eanx’assed all the eligibles and personally inteiwiewed them. And the Civil Service Commission has specified that “ [promotions may be dated as of the effective date of the accompanying budget certificate provided, hoxvever, that such promotions are not made effective more than 30 xvorking days before or more than 30 xxmrking days after the date of this certification ” (see No. 8, “ Special Terms and Conditions”, on reverse side of “ Certification”). The budgetary requisition was dated February 15, 1957. Perhaps, for the sake of accuracy, the appointment should have been made and dated “as of” that date, rather than “on” that date. But the oversight is inconsequential. And the “ Notice of Appointment and Disposition of Certification ” is, indeed, dated March 1, 1957. In short, the objection that the appointment was void because it was prematurely made is overruled.
There is no merit to the contention that the petitioner xvas entitled to the appointment as a matter of law or that the respondent Joslin has not been duly appointed. The application is in all respects denied.
Settle order, in which shall be recited the photostatic copies of the documents xvhich have been submitted by the respective parties in the moving papers, pro and con, in the briefs and otherxvise, which copies are filed herewith.

 The respondent Joslin alleges in his answer that he, too, “ is a disabled veteran of World War II, having performed active military duty in the United States Army between December 26, 1942, and November 5, 1945 ”, and having been shot down on a bombing mission over Germany. However, that fact cannot be taken into consideration in a determination of the issues here because Joslin’s standing on the promotion examination does not appear to have been requested by him to be affected by his veteran’s status, and in any event he was not processed or certified as such for the promotion appointment now in issue.

 “ The rules prescribed by the state and municipal commissions pursuant to the provisions of this chapter shall have the force and effect of law” (Civil Service Law, § 6, subd. 1).

 This section of the rules refers to “ Disqualification ” of a candidate. There is no issue here of disqualification.

:i “ Laws shall be enacted to provide for the enforcement of this section ” (N. Y. Const., art. V, § 6, last sentence).