Matthew M. Levy, J.
Although directed, after due conviction of a crime, to appear in General Sessions for sentence on November 2,1955, the defendant failed to do so, and failed again to appear on the adjourned date of November 14, 1955, at which time his bail bond in the sum of $3,500 was forfeited [Footnote No. 1], This sum was paid by the surety, and commingled with the city’s general funds. The defendant was apprehended on July 3, 1956. The surety moved to. direct the Comptroller of the City of New York to. return the money paid by it as a. consequence of the forfeiture of the bond. The defendant was sentenced on March 8, 1957, and thereafter the surety’s motion was submitted to me for disposition.
The moving party claimed that there was misunderstanding, rather than willful failure to appear, on the defendant’s part. It was asserted in the moving papers that the defendant thought that the dates specified were not fixed for sentence, but that he was placed on probation and that the bail furnished to assure his appearance for sentence had been discharged. The defendant said, further, that the probation department of General Sessions was at all times aware of his whereabouts. B.ut, be, that as it may, answered the respondent, the fact is that, after *43 the making of this motion, bnt before it was presented to the court, the defendant pleaded guilty to the crime of jumping bail, as a part of a package arrangement which also disposed of another pending indictment against him; and, argued the respondent, this precludes a contention by the surety that the defendant’s nonappearance was innocent — indeed, it forecloses the court from inquiring into the factor of innocence or willfulness, since the defendant’s plea of guilt to the crime of jumping bail must be considered here in reference to the elements which the prosecutor would have been required to prove in the absence of such a plea, with willfulness as one of those elements (Penal Law, § 1694-a).
In support of the argument, the respondent cited People v. Continental Cas. Co. (301 N. Y. 79). I deemed that this precedent was not helpful to the respondent in respect of the point urged. For, if a plea of guilt of bail jumping, without more, would be conclusive as a matter of law of the willfulness of the defendant’s default in appearance, it would not have been necessary for the Court of Appeals in that case to consider at length the circumstances of the failure of the defendant Knapp to appear. Nevertheless, this the court did (pp. 82, 84^85) before it found itself able to determine that, on the facts, there was no justification presented by the surety to warrant a holding of excusable default.
The cases cited by the surety with respect to the issue raised as to the element of willfulness were equally inconclusive. The surety relied upon People v. Davis (168 Misc. 511) and People v. Pilkington (199 Misc. 667). The Davis case involved an application in the Court of General Sessions to inspect the minutes of the Grand Jury in relation to an indictment for the crime of feloniously jumping bail. The motion was denied, since the defendant’s affidavit did not disclose any reason for assuming that the evidence before the Grand Jury was insufficient to show that the failure to appear was willful. In the course of its opinion, the court indicated that the burden of establishing a willful failure of appearance was upon the prosecutor. Of course, that is the correct rule. The Pilhington case was an appeal from a conviction for jumping bail. The decision depended upon the weight of the evidence adduced. Thus, in neither precedent cited by the surety was I able to gain any material aid in a solution of the present problem.
Accordingly, and because the moving and answering affidavits otherwise inadequately presented a complete picture of the situation, I felt impelled, in the interests of justice, to direct *44 and conduct a hearing. Both parties were granted and utilized full opportunity to present oral and documentary evidence.
On all of the evidence, I have concluded that the default was deliberate and intentional. Indeed, the evidence is overwhelming to that effect. I shall touch only upon some of the highlights. It may be noted, at the outset, that the defendant was not a neophyte in his encounters with the processes of criminal law and procedure, and that, at all times relevant to a resolution of the issue, he was represented by counsel. I find that the defendant did not believe, as urged by the surety, that he had been given a suspended sentence and placed on probation. On the contrary, it is quite plain, from the record now before me, that — when the matter was adjourned by the court from March 29, 1955, to November 2, 1955, so as to enable the Judge at General Sessions to give the defendant an opportunity to establish and rehabilitate himself, requiring him in the meanwhile to keep in touch with the probation department — the defendant knew quite well that the sentence was deferred and that the bail was continued. [Footnote No. 2.] The probation card that the defendant received on March 29, 1955, had written on it expressly that this was a case of “ deferred sentence 11/2/55 ”. And, on October 25, 1955, the defendant wrote the probation bureau that “ I will come to your office the first of November, as I have to appear in court 10 o’clock the second of Nov.”
The defendant did not so appear. And it may well be that this default was occasioned by the defendant’s assumption that the sentencing Judge had been given cause by the defendant to be more severe in his judgment than the defendant had hoped would be the case. In any event, the defendant admitted on the hearing before me that he knew what he was doing when he *45 did not appear on the adjourned date — and, indeed, that he had made up his mind not to go to court — for he had received word that the police were looking for him, perhaps in respect of other matters in which he had previously become entangled with the criminal law. It was not until some seven months or more later that the defendant was captured — and that was by vigilant police efforts, not as a result of any aid proffered by the surety in that behalf. In my view, the uncontroverted facts, developed upon the hearing, effectively demolish the assertion in the moving affidavit that “ this is not a case of the wilful and deliberate failure to appear for judgment”.
*44 “The Court: I am going to defer sentence * * •. You ought to stay on the straight and narrow. I am going to tell you this: This is only a deferment of sentence. You understand that?
“ The Defendant: Yes, your Honor.
“ The Court: * * * Now, you are going to be under the supervision
and control of the Probation Department, and I expect you to be completely honest and frank with them in every detail. Now, they have the right, naturally, to ask me to put this sentence on for an earlier date. I, myself, have the right, as you know, even though there is deferment here, to advance the date of sentence and bring it on for an earlier date. Now, if you fail to strictly comply with the law, every detail, of what they advise you> what they expect of you — the Probation Department — you will come before me; and I am going to impose a sentence that will be a severe one. What I am going to do on the adjourned date, I don’t know. That will depend a lot *45 upon yourself, what happens in the interim period * * *. Now, here you have an opportunity — you are forty-seven years of age. You ought to do everything you can to avoid State Prison. Now, if there is any violation on your part, improper conduct, you will come before me. I am not going to hesitate, after having given you an opportunity, I can’t hesitate, under those circumstances, to give you the severest sentence possible. Do you understand that?
" The Defendant: Yes, your Honor.
"The Court: All right. Sentence is deferred until November 2nd, and the defendant is placed under the supervision and control of the Probation Department.
“The Court: Now remember what I said to you, Mr. Lanahan. Don’t forget what I said to you. If you are not on the straight and narrow one hundred percent, don’t expect any further mercy from me.
“Mr. Lippman (the defendant’s attorney): Will your Honor continue bail, or what do I do with respect to bail? * * *
“The Court: All right. We will continue the bail in the same amount [$3,500].” * * •
In People v. Fiannaca (306 N. Y. 513, 516-517) the court said: “ Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance, especially if his failure to appear was other than deliberate and willful.” The surety urges consideration of the fact that the People lost nothing by the delay, since the defendant was finally sentenced, and by the same Judge whose determination the defendant may have sought to evade. The eventual result is certainly not conclusive upon the question, for, if it were, the prospect of forfeiture would generally become but a slight hazard, readily and willingly submitted to by criminals seeking to escape lawful punishment. The burden is upon the applicant in these cases to establish that there was no loss sustained (People v. Continental Cas. Co., 301 N. Y. 79, 83, supra), and the fact of ultimate sentence is not capable of establishing the negative. Obviously, the loss occasioned by the default could have occurred only prior to sentence. And where there is the circumstance of *46 deliberate bail jumping, delay — without more- — may well be a loss (People v. Glass, 275 App. Div. 851).
While People v. Continental Cas. Co. (supra) involved other facts, a comment which the court there made is apposite here (pp. 85-86): “ Knapp’s conduct embarrassed and obstructed the court in the administration of justice and tended to bring the administration of the law into disrespect if not into disrepute * * *. An application for the granting of such relief [the remission of the forfeiture] is addressed to the discretion of the court and should be exercised only under exceptional circumstances and to promote the ends of justice. ’ ”
Moreover, it appears to me that “ production ” of the defendant for sentence in the case at bar was unreasonably delayed. In fact there was compulsion rather than submission. It has been shown by the respondent on this motion that, from November, 1955 to June, 1956, the defendant was sought without success by the authorities, and that he was not apprehended until July 3, 1956. It was not until then that the defendant became available for, and was subjected to, sentence.
I find no exceptional circumstances justifying the exercise of discretion warranting the remission of the forfeiture in the case at bar (see People v. Cohen, 229 App. Div. 515, 518, affd. 255 N. Y. 530; cf. People v. Manufacturers Cas. Ins. Co., 208 Misc. 504). And, in my view, the amount of the bail here is not so out of proportion to the requirement of maintaining respect for the mandate of the court as to make one feel that the penalty does not fit the default.
Thus the matter would be disposed of were it not for the fact that the record upon the hearing disclosed that the bail was forfeited upon the defendant’s failure to appear, not on November 2, but on November 14, 1955, and that not only did the defendant not appear on the earlier date, but that the learned Judge in charge of the case (being necessarily engaged by due assignment in the performance of other judicial responsibilities) gave oral and informal, as distinguished from written or open-court, direction for an adjournment of the sentence to November. 14. The surety has seized upon this circumstance to contend that the forfeiture was invalid as a matter of law in that there was here no lawful order that the defendant appear for sentence on the latter date. It is urged that — since there was no written or record order of adjournment — the court had not duly “appointed” November 14 as the “time for pronouncing judgment ” (Code Grim. Pro., § 471), and, therefore, that the defendant’s “presence in court” was not “lawfully *47 required ” on the 14th, and that, in consequence, his bail could not then have been forfeited (Code Grim. Pro., § 593).
I recognize that there is a presumption of the regularity of judicial proceedings (Matter of O’Connor v. Eppig, 14 Misc 2d 641, 646). But this presumption is not necessarily impregnable, and certainly not on direct attack. And, therefore, had a formal order of the Judge been obtained or a formal session of the court been held so as to direct an adjournment of sentence to November 14 and the continuance of the defendant on bail (cf. People v. Scott, 67 N. Y. 585; People v. Bennett, 136 N. Y. 482, 488-489, motion for reargument denied 137 N. Y. 601) — although a procedure sometimes seemingly somewhat onerous, and perhaps not customary — it seems to me that it would have been more in keeping with the artistry of the law and it certainly would have avoided subsequent controversy on the issue.
However, I do not find it necessary to reach the issue as to whether the failure to proceed in that precise and meticulous fashion results in a conclusion that the forfeiture here was invalid. And my reasons for this judicial reticence are two — legal and factual — which reasons, although not briefed by counsel, deserve brief analysis here.
The applicable jurisdictional statute reads as follows: ‘ ‘ After the forfeiture of the undertaking or deposit, as provided in this article, the court directing the forfeiture, * * * or in the city of New York, the supreme court may remit the forfeiture or any part thereof, upon such terms as are just.” (Code Grim. Pro., § 597.) Keeping in mind the nature of this grant of power to the Supreme Court, I am of the opinion that the application as now pressed should have been addressed not to this court, but rather to the tribunal which directed the forfeiture, i.e., to the Court of General Sessions. For the surety is seeking now, it seems to me, to vacate the order of forfeiture as a matter of law, not to obtain a remission as a matter of discretion (cf. People v. Wirtschafter, 305 N. Y. 515, 519) and by way of summary motion, not by plenary action (cf. Matter of Doeskin Prods., 7 A D 2d 42). If so, direct, rather than collateral, attack is in order.
Furthermore, the respondent avers — and it was not controverted by affidavit or testimony — that the sum involved has “ been paid by the surety and turned over to the treasurer of the City of New York as required by law, said sum having become eo-mingled with the funds raised by taxation by the City of New York”. In the circumstances, it is doubtful whether it can “ be summarily ordered to be paid back ” (People *48 v._Levy, 169 App. Div. 571, 573, appeal dismissed 217 N, Y. 672; People v. Cohen, 229 App. Div. 515, 517, affd. 255 N. Y. 530, supra; Matter of Sayles, 84 App. Div. 210, 213-214; but, see, People v. Phelan, 219 App. Div. 80, 82; cf. People v. Licenziata, 230 App. Div. 358, affd. 256 N. Y. 534).
And even were I to assume power in this court to act in the premises, and that the presumption of regularity is not conclusive in a summary proceeding such as this, and on collateral attack, I find, on the facts subsequently occurring, that there was full knowledge on the part of both the defendant and the surety of the requirement of appearance on November 14, and adequate opportunity to avoid the consequences of the default. [Footnote No. 3.] On this record, it is clear that the tests of due process — notice and hearing — have been fully met. That, in my opinion, suffices to sustain the order of forfeiture. (Cf. People v. Parisi, 217 N. Y. 24, 27.)
The application is denied. An order may be settled accordingly.
“ Mr. Lippman (the defendant’s attorney in March and in November, 1955): Tour Honor * * * I got a call this morning that said he [the defendant] was ill in bed and he could not get out. There is something wrong with his legs. I ask Tour Honor to put it off for a few days.
“Mr. McNeill (the assistant district attorney) : Tour Honor, I am going to ask for the forfeiture of the bond * * *
“ Thé Court: The bond is forfeited, but I will hold up the execution until the 16th [of November],
“ Mr. Lippman: The bail bondsman is in Court, your Honor, so he knows the date, also.
“ The Court: Tes, until the 16th.”
On March 4, 1957, the transcript of certain subsequent proceedings reads, in its relevant part, as follows:
“ The Court: By that plea [of guilty to the crime of jumping bail as a felony] do you admit that on November 14, 1955, you were required to appear in the Court of General Sessions, in Part III thereof, in connection with a sentence on your plea to a prior indictment * * * ?
“ The Defendant: Tes, sir.
“The Court: Is it a fact that you did not appear on that date?
“ The Defendant: Tes.
“ The Court: Is it a fact that you did not surrender yourself within 30 days of such date?
“ The Defendant: That’s right.”
And, on March 8, 1957, the transcript of further subsequent proceedings reads, in its relevant part, as follows:
“Mr. Erdman (counsel for the defendant) : * * * It was made very clear, and made on the record also, that in pleading to the bail jumping, of which there is no question the defendant was guilty, * * *
*49 “ Now, as to his conduct during the period under which he was under deferred sentence and under supervision of the Probation Department, I think the defendant would like to address you, if your Honor would hear him.
“The Court: Yes. You can say anything you choose to, in connection with your behavior during the period, or any other facets of the impending sentence. Say whatever you choose to in connection with that, before I impose sentence.
“ The Defendant: Two days before my probation period expired, I came down to New York to come to your Court. Shortly after I arrived in New York, I received a telephone call from my wife, telling me that the New York Police were up there looking for me. I, in turn, tried to get in touch with Mr. Lippman who was my attorney on the original ease, and I couldn’t get ahold of Mr. Lippman, and I consulted another lawyer and explained the situation, as well as I could, and he told me that it wasn’t reasonable to believe that they would admit me to bail inasmuch as the disposition hadn’t been made in the attempted possession of burglary tools. Now, at that time, I had my wife and family located in a strange town, also with a string of horses upstate in Troy, New York, without visible means of support. I had a job, and I had a job up in Troy, and I had a job down here. And I made a decision at that time, and I knew I was doing wrong, and I knew eventually I would have to pay for it, and I went down to work down here, and I didn’t come to court. I thought about it several times, and I was going to give myself up, but I tried to save my stable and my horses. I had to winter my horses. The summer season was over. I rented another stable in Troy and it was imperative for me to go to work immediately, and I didn’t run very far. I used my own name and my own social security number. I realize I made a violation, and eventually I would have to pay for it. I thought at that time that I was committing a worse crime by leaving my wife and children stranded in a strange town up there with those horses, and I had to get to work and 1 got work. The only thing I could say is that I am sorry it happened. I made a very poor decision.
“The Court: Do you want to say anything, Mr. Erdman?
“Mr. Erdman: Nothing.”

. The defendant Anthony Rudolph, alias Anthony Lenihan, was charged with the crimes (allegedly committed on November 24, 1953) of burglary in the third degree, attempted grand larceny in the first degree, and possession of burglar’s instruments after prior conviction.. Upon arrest, bail was furnished in the sum of $3,500. On January 25, 1955, the defendant entered a plea of guilty to the crime of attempted possession of burglar’s instruments after prior conviction. The sentence was adjourned to March 29, 1955, and the defendant was continued on bail. On the latter date, sentence was duly further adjourned to November 2, 1955, and bail was again continued. An adjournment was then had to November 14, 1955, and bail continued accordingly — the legal efficacy of which has been challenged in this proceeding.

 When, on March 29, 1955, the General Sessions Judge then presiding adjourned the sentence to November 2, 1955, the following colloquy occurred:

 On November 14, 1955 (the adjourned date fixed for sentence), the defendant’s attorney and the surety representative were both in court, and the following occurred: