THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES J. FIANNACA, Defendant, and MICHAEL AMATO et al., Appellants.

Argued March 8, 1954; decided April 15, 1954.

*Anthony Manguso* for appellants.  I. The order reversed by the Appellate Division is based on the exercise of the lower court's discretion and should not have been disturbed or reversed.  (*Matter of Pellegrino* [*People*], 152 App. Div. 482, 207 N. Y. 770; *People* v. *Heit,* 152 App. Div. 179; *People* v. *Di Meo,* 181 App. Div. 893; *People* v. *Young,* 92 Hun 373, 151 N. Y. 651; *People* v. *Parkin,* 263 N. Y. 428; *People* v. *Cohen,* 245 N. Y. 419; *People* v. *Licenziata,* 256 N. Y. 534; *Clark* v. *Delaware & Hudson R. R. Corp.,* 245 App. Div. 447; *Hogan* v.

*Franken,* 221 App. Div. 164; *Matter of Miller,* 162 Misc. 563; *People* v. *Continental Cas. Co.,* 301 N. Y. 79; *People* v. *Schwarze,* 168 App. Div. 124; *People* v. *Spear,* 1 N. Y. Crim. Rep. 538.) II. Dereliction of duty on the part of the State of New York cannot, and should not, be a basis for forfeiture of a bail bond. (*People* v. *Wirtschafter,* 305 N. Y. 515.)

*John F. Dwyer, District-Attorney* (*George R. Blair* of counsel), for respondent. The Appellate Division properly reversed the order of the lower court which remitted the forfeiture, vacated the judgment and cancelled the notices of liens. (*People* v. *Coman,* 5 Daly 527; *People* v. *Fields,* 6 Daly 410; *People* v. *Spear,* 1 N. Y. Crim. Rep. 538; *People* v. *Parkin,* 263 N. Y. 428; *People* v. *Licenziata,* 230 App. Div. 338, 256 N. Y. 534; *People* v. *Schwarze,* 168 App. Div. 124; *People* v. *Rich,* 36 App. Div. 60; *People* v. *Cohen,* 229 App. Div. 515, 255 N. Y. 530; *Matter of Pellegrino* [*People*], 152 App. Div. 482, 207 N. Y. 770; *People* v. *Heit,* 152 App. Div. 179; *People* v. *Handel,* 238 App. Div. 596.)

FULD, J. This appeal involves an application for remission of a bail forfeiture.

The defendant Charles Fiannaca and one Michael Tascaralla were indicted by the grand jury of Erie County in October of 1948, charged with crimes of burglary and grand larceny. Fiannaca pleaded not guilty and was admitted to bail in the sum of $10,000, the undertaking of bail being executed by him as principal and by the three appellants herein as sureties. The case was moved for trial on a number of occasions in 1948 and 1949, but for some reason — possibly because of the codefendant Tascaralla's incarceration on other charges — it was not tried. The district attorney finally noticed the case for trial in October, 1952, and, when defendant failed to appear, the bail was forfeited and judgment was directed against appellant sureties in the sum of $10,000.

Some time later, appellants moved for an order remitting the forfeiture and setting aside the judgment entered. It appeared from their affidavits that defendant had been in the Rochester County Hospital for mental examinations during June, 1951; that he was committed to the Rochester State Hospital in July,

1951; and that he escaped from that institution on October 21, 1951 — a year before the case was noticed for trial — and has not since been seen. Although, when appellants became sureties, they had declared under oath that they were worth $20,000, they now seek remission on the ground that — in addition to advanced age and ill health — they have " limited " incomes. More specifically, appellant Galiano expressly states that he " has a yearly income of $1,500.00 to $2,000.00, in addition to the income received from the real property owned by him ", and the other two appellants, husband and wife, declare that they receive their support " from the income of real estate and a small grocery business ". There is no indication in either case of exactly how much or how little appellants have, in the way of income or capital resources.

The Erie County Court granted appellants' application and remitted the forfeiture. The Appellate Division reversed, finding that, because of the absence of " extreme hardship ", there was no " factual basis for the exercise of the court's discretion ". In directing reversal and denial of the application, however, it did so without prejudice " to the right of the sureties to renew * * * upon proper papers within the statutory period (Code Crim. Pro., § 598), if so advised." That order is a final one, finally determining a special proceeding, and the appeal is properly here as of right. (See *People* v. *Parkin,* 263 N. Y. 428; *Matter of Weinstock* v. *Hammond,* 270 N. Y. 64; see, also, Cohen and Karger, Powers of the New York Court of Appeals, pp. 60–61.)

Section 597 of the Code of Criminal Procedure authorizes a court to remit a forfeiture of bail " upon such terms as are just." When the statute was first passed in its present form, this was taken to give the courts a " discretion almost absolute ". (*People* v. *Spear,* 1 N. Y. Crim. Rep. 538, 541.) But, with time and cases, standards developed, the courts tending to apply one set of criteria where the defendant ultimately put in an appearance and another where he did not. Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance, especially if his failure to

appear was other than deliberate and willful. (See *People* v. *Continental Cas. Co.,* 301 N. Y. 79, 83, 84; *People* v. *Phelan,* 219 App. Div. 80, 82; *People* v. *Coman,* 5 Daly 527, 531, appeal dismissed 63 N. Y. 611; see, also, Note, 84 A. L. R. 420.)[1] On the other hand, where the defendant is not produced at all, or turns up only after a long lapse of time, the courts will ordinarily deny remission without regard to the mitigating factors asserted in connection with his nonappearance. There are exceptions, of course. Death, insanity, imprisonment on another charge may, under some circumstances, warrant remission. (See, e.g., *People* v. *Parkin, supra,* 263 N. Y. 428; see, also, *People* v. *Wissig,* 7 Daly 23; Note, 7 A. L. R. 392; Note, 26 A. L. R. 412; cf. *Taylor* v. *Taintor,* 16 Wall. [U. S.] 366; *People* v. *Green,* 253 App. Div. 704; *People* v. *Rich,* 36 App. Div. 60, 62.)

Apart from these considerations, however, the only factor which the courts of this state have considered as basis for remission where the principal disappears is whether the surety will thereby suffer " extreme hardship ", such hardship as " will cause destitution to a family, deprive children of support and education, or creditors of their just debts." (*People* v. *Spear, supra,* 1 N. Y. Crim. Rep. 538, 541; see, also, *People* v. *Licenziata,* 256 N. Y. 534, affg. 230 App. Div. 358, 360; *Matter of Pellegrino,* 207 N. Y. 770, affg. 152 App. Div. 482; *People* v. *Di Meo,* 181 App. Div. 893, appeal dismissed 224 N. Y. 612; *People* v. *Schwarze,* 168 App. Div. 124; *People* v. *Heit,* 152 App. Div. 179, 181.) By and large, the courts have tended — " where the accused was *not* in custody and produced " (*People* v. *Parkin, supra,* 263 N. Y. 428, 432, emphasis supplied) — to hold sureties to strict liability upon the disappearance of their principal. The reason is easily to be perceived; " there is a principle involved beyond that of clemency to the bondsman. Justice may be defeated by the escape of the principal, and if it is

1. Former sections of the New York City Consolidation Act expressly permitted remission — where the principal was produced after forfeiture — "upon the certificate of the district attorney that the people of the state of New York have lost no rights by reason of " the surety's failure to produce him "in compliance with the terms of [the] recognizance ". (N. Y. City Consolidation Act, L. 1882, ch. 410, §§ 1482, 1483; see, also, *People* v. *Parkin,* 263 N. Y. 428, 432; *People* v. *Bennett,* 136 N. Y. 482, 489; *People* v. *Cohen,* 229 App. Div. 515; *People* v. *Levy,* 169 App. Div. 571, 573.)

clearly understood that the bondsman will be held rigidly accountable for the escape, the administration of the criminal law will be promoted." (*People* v. *Schwarze, supra,* 168 App. Div. 124, 126; also, *People* v. *Licenziata, supra,* 230 App. Div. 358, 360, affd. 256 N. Y. 534.)

In the light of these principles and of Fiannaca's complete disappearance, it is manifest, first, that the courts below were privileged to remit only on grounds of " extreme hardship " and, second, that no such hardship was here shown. As already noted, appellants simply maintain that they are all suffering from ill health and that they have " limited " incomes. However, after indicating that they are property owners, they refrain from disclosing the extent of their resources or just how limited they are. Certainly, these are not such mitigating circumstances as to " outweigh the public necessity of providing deterrents, as effective as possible," to the escape of persons convicted of, or indicted for, crime. (*People* v. *Licenziata, supra,* 230 App. Div. 358, 361, affd. 256 N. Y. 534.)

The district attorney could, of course, have moved the case for trial whenever he chose, but that does not mean that his failure to do so either brought about the defendant's disappearance or relieved appellants of their obligation as sureties to produce him when required. They could have avoided any risk attendant upon a delay in trial by the simple device of surrendering the defendant, pursuant to section 590 of the Code of Criminal Procedure, " At any time before the forfeiture of the undertaking ". (See, also, *Taylor* v. *Taintor, supra,* 16 Wall. [U. S.] 366, 371.)

Nor are the circumstances of defendant's confinement to, and his escape from, the Rochester State Hospital such as to compel remission of the forfeiture. The Code of Criminal Procedure provides, in an appropriate case, for an inquiry before trial into the sanity of a defendant indicted for a crime (Code Crim. Pro., § 658 *et seq.*). The chances of a defendant's escape from custody are reduced to a minimum by virtue of the safeguards there set up (e.g., Code Crim. Pro., § 660). Consequently, sureties such as appellants may not stand by and watch a defendant being committed to a civil institution, particularly when the provision of the law (Mental Hygiene Law, § 74),

pursuant to which he was apparently committed, indicates that it does not apply to those awaiting trial on criminal charges. (Cf., e.g., *Taylor* v. *Taintor, supra,* 16 Wall. [U. S.] 366, 371.) Moreover, there is not the slightest evidence in this case that Fiannaca was in such a mental state as to prevent him from standing trial — that he was " incapable of understanding the proceeding or making his defense " (Penal Law, § 1120). When defendant allegedly became mentally ill, he was still in the custody of appellants, and they were not absolved from the necessity of producing him at that time for possible handling under section 658 of the Code of Criminal Procedure or later, if his condition warranted, for trial. As soon as they learned of his disturbed state — and they had ample opportunity to do so between the time he was sent to the hospital until his escape some months later — it was incumbent upon appellants to inform the court. Proceedings could then have been instituted to determine his sanity — and to arrange for his commitment, if found insane — in accordance with the applicable provisions of the Code (§§ 658–662f).

Advancing a somewhat related argument, appellants assert that, since defendant had been placed in the custody of the state — by being committed to a state mental institution — it was a " dereliction of duty " of the state's own agents to let him escape which may not be made the basis for a bail forfeiture. The answer has already been given. In the first place, it is more than likely that one accused of serious crime would not have been committed to a civil institution, such as the Rochester State Hospital, had an application been made as provided for in the Code of Criminal Procedure (§ 658 *et seq.*). In the second place, since the state did nothing to hinder appellants from surrendering defendant for trial or commitment, appellants may not impose upon the state a responsibility to produce him or a liability for his escape.

The order of the Appellate Division should be affirmed.

FROESSEL, J. (dissenting). I dissent, and disagree with the Appellate Division that there was " no factual basis for the exercise of the [county] court's discretion in remitting the forfeiture ". Indeed, I am of the opinion that it was an abuse of discretion to disturb the determination of the County Court

made pursuant to section 597 of the Code of Criminal Procedure, and to deny the application for remission, even though it was without prejudice " to the right of the sureties to renew * * * upon proper papers within the statutory period ". (282 App. Div. 548, 549–550.)

The bail bond was executed on October 4, 1948. The District Attorney did not move this case for trial until four years later. In the meantime, defendant, on July 9, 1951, was committed by the County Court of Monroe County to the Rochester State Hospital, where he remained continuously until October 21, 1951. The commitment was based on the examination by two psychiatrists, who confirmed that defendant was mentally incompetent. While in custody of such institution, which is a State hospital (Mental Hygiene Law, § 60, subd. 14), under the " jurisdiction, supervision and control " of the State Department of Mental Hygiene (Mental Hygiene Law, § 11), he was allowed to escape on the last-mentioned date.

Aside from the hardship claimed by appellants, it would be a travesty on justice if the People of the State of New York, to whom the bail bond ran and who had defendant in their custody at the time of his escape, were permitted to avail themselves of a forfeiture consequent upon their own lack of " supervision " (see *Martindale* v. *State of New York*, 269 N. Y. 554). The State should not be allowed to create a debt and collect money for itself by the careless acts of its own officers (*People* v. *Wirtschafter*, 305 N. Y. 515, 522).

The order of the Appellate Division should be reversed and the order of the County Court affirmed.

LEWIS, Ch. J., CONWAY, DESMOND, DYE and VAN VOORHIS, JJ.. concur with FULD, J.; FROESSEL, J., dissents in an opinion.

Order affirmed.