The People of the State of New York, Appellant, v. Peerless Insurance Company et al., Respondents.

First Department, October 14, 1964.

*Richard H. Kuh* of counsel (*Michael R. Stack* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Emanuel Thebner* (*Murray Brensilber* with him on the brief), attorney for Peerless Insurance Company, respondent.

*E. Edan Spencer*, attorney for Public Service Mutual Insurance Company, respondent.

*Sylvan Schwartz* of counsel (*Harry Salvan* with him on the brief; *Aaron Slavetsky*, attorney), for Stuyvesant Insurance Company, respondent.

BREITEL, J. The People appeal from 57 orders granting motions made by professional compensated sureties to remit the forfeiture of bail of defendants in criminal actions for their nonappearance at the court-appointed times. It is urged that in none of these cases did the surety sustain its burden of proving exceptional circumstances and its further burden that the People had not suffered any loss of rights as a result of the nonappearance.

In all but 4 of the cases the bailed defendant has been surrendered and in all but 11 a final disposition has been made in the criminal action. In 2 of the 4 cases in which the defendant has not been surrendered, he was confined in a New York City penal institution. In none of the cases did the People present any proof that the People were prejudiced by the loss of evidence, the unavailability of witnesses, or the incurring of expenses by the People or others, or that the disposition was otherwise adversely affected by the delayed appearance of the bailed defendant. The District Attorney argues, however, that the burden of proof is on the surety and prejudice to the People should be inferred or presumed from the bald fact of delay. All the criminal actions had been pending in the Criminal Court of the City of New York and involved no charge higher than that of misdemeanor. Bails ranged from $500 to $1,500. All the motions were made and granted in Special Term of the Supreme Court.

The governing statutes are found in the Code of Criminal Procedure. Section 593 provides: '' If, without sufficient excuse, the defendant neglect to appear for arraignment, or for trial or judgment, or upon any other occasion where his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes; and the undertaking of his bail, or the money deposited, instead of bail, as the case may be, is thereupon forfeited.'' Section 594 provides: '' If, at any time before the final adjournment of the court, the defendant appear and satisfactorily excuse his neglect, the court may direct the forfeiture of the undertaking or deposit to be discharged, upon such terms as are just.'' Sections 595, 595-a, and 596 provide for the enforcement of the forfeitures; their content is not relevant to the present issues. Section 597 provides for the relief obtained by the sureties in the instant appeals. It reads: '' After the forfeiture of the undertaking or deposit, as provided in this article, the court directing the forfeiture, the county court of the county, or in the city of New York, the supreme court may remit

the forfeiture or any part thereof, upon such terms as are just." Section 598 provides that an application for remission of the forfeiture must be made within one year after the forfeiture is declared and "can be granted only upon payment of the costs and expenses incurred in the proceedings for the enforcement of the forfeiture."

The procedure, substantive rules, and the problems associated with them go back to the earliest times. Except for historical interest and to observe the evolution from a doctrine of very strict forfeiture to a somewhat relaxed but still firm doctrine, it would not be necessary or profitable to elaborate on the old cases or their sequence. In quite recent times the Court of Appeals has made clear and explicit the twin governing principles, namely, that a remission is justified only in exceptional circumstances and that there must have been no loss of rights or prejudice to the People. As a corollary rule, the surety has the burden of proof with respect to both bases for a requested remission. (*People* v. *Fiannaca*, 306 N. Y. 513; *People* v. *Continental Cas. Co.*, 301 N. Y. 79, 83–84; cf. *People* v. *Parkin*, 263 N. Y. 428, arising under the now-repealed requirement that the District Attorney certify that the People have lost no rights by reason of the nonappearance of the bailed defendant.) The principles and the corollary rule are substantially the same as prevail elsewhere in the United States (8 C. J. S., Bail, §§ 90–93; 8 Am. Jur. 2d, Bail and Recognizance, §§ 165–195).

In the *Fiannaca* case, Judge FULD summed up the applicable principles (pp. 516–517):

"Section 597 of the Code of Criminal Procedure authorizes a court to remit a forfeiture of bail 'upon such terms as are just.' When the statute was first passed in its present form, this was taken to give the courts a 'discretion almost absolute'. (*People* v. *Spear*, 1 N. Y. Crim. Rep. 538, 541.) But, with time and cases, standards developed, the courts tending to apply one set of criteria where the defendant ultimately put in an appearance and another where he did not. Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance, especially if his failure to appear was other than deliberate and willful. (See *People* v. *Continental Cas. Co.*, 301 N. Y. 79, 83, 84; *People* v. *Phelan*, 219 App. Div. 80, 82; *People* v. *Coman*, 5 Daly 527, 531, appeal dismissed 63 N. Y. 611; see, also, Note, 84 A. L. R. 420.) On the other hand, where the defendant is not produced at all, or turns up only after a long lapse of time, the courts will ordinarily deny remission without

regard to the mitigating factors asserted in connection with his nonappearance. There are exceptions, of course. Death, insanity, imprisonment on another charge may, under some circumstances, warrant remission. (See, e.g., *People* v. *Parkin, supra,* 263 N. Y. 428; see, also, *People* v. *Wissig,* 7 Daly 23; Note, 7 A. L. R. 392; Note, 26 A. L. R. 412; cf. *Taylor* v. *Taintor,* 16 Wall. [U. S.] 366; *People* v. *Green,* 253 App. Div. 704; *People* v. *Rich,* 36 App. Div. 60, 62.)

"Apart from these considerations, however, the only factor which the courts of this state have considered as basis for remission where the principal disappears is where the surety will thereby suffer ' extreme hardship ', such hardship as ' will cause destitution to a family, deprive children of support and education, or creditors of their just debts.' [citing cases]. By and large, the courts have tended—' where the accused was *not* in custody and produced ' (*People* v. *Parkin, supra,* 263 N. Y. 428, 432, emphasis supplied) — to hold sureties to strict liability upon the disappearance of their principal." (Footnote omitted.)

The instant appeals demonstrate that a loose practice has developed in which the surety, in applying for remission, has not sought to maintain a semblance of its burden of proof, disregarding even the requirement for competent evidence by offering hearsay affidavits, and in which the alleged grounds for remission are either implausible or trivial. On the other hand, the District Attorney, in opposing the applications, has often insisted upon ultimate proof of facts best known by him or most easily available to him. At the same time surrounding and highly relevant circumstances have been wholly ignored by everyone. A good illustration is the prior criminal record and the circumstances of the pending criminal charge against the defendant, bearing, as they do, upon his familiarity with criminal proceedings and the likelihood that he is associated with others highly sophisticated in the manipulation of criminal proceedings.

Moreover, as the District Attorney has correctly pointed out, the statute authorizes partial remissions in appropriate cases, but the practice, at least in this Department, has been to handle the matters on an " all or nothing " basis, disregarding the fact that the fault of the principal and the prejudice to the People may be of varying and counterbalancing degrees. In such cases partial remissions may well afford a more just and delicate adjustment in the dispositions. With the looseness of practice there has developed the concomitant that, in granting the remissions, the court most often does not specify the facts found or the reasons for the remission, except in the most general terms.

Recognizing that the past looseness of practice has been the joint responsibility of all the participants, a just resolution of the problem requires as to the past a somewhat more relaxed application of the principles and rule, but for the future a strict adherence should be expected. Moreover, to prevent a recurrence of the conditions exposed in these appeals, and to evolve standards and controls in the highly discretionary application of partial rather than total remissions, the court, in granting remissions, should detail with precision the facts found and the reasons for its disposition. It is all but axiomatic in the judicial process that the need to assign reasons for a disposition is the best assurance that the decision is or will be right, or if wrong, that it can be easily criticized and corrected.

Before disposing of the particular appeals it is convenient to set forth, generally, the reasoning which this court follows in making such dispositions.

## 1. THE BURDEN OF PROOF

While the surety has the burden of proof this rule does not mean, regardless of the kind of facts involved, that it should carry the burden of establishing the facts to the utmost conclusively documented possibility. It should suffice, within the principles and the corollary rule elaborated in the *Fiannaca* case (306 N. Y. 513, *supra*) to meet the burden of going forward, as distinguished from the burden of proof, that the surety, by an affidavit of a person knowing the facts, establish them prima facie. Thus, where the bailed defendant makes affidavit that he did not appear at the appointed time because he was confined in a New York City municipal hospital or prison, a State institution, or a voluntary hospital in the City of New York, the surety need not also supply the certificate of any of these institutions. If the averment is questioned the District Attorney can verify it by the simplest of communications, so long as the defendant's assertion is particular enough, and hold him responsible for a false affidavit too, if that be the situation. With respect to confinements elsewhere, the surety is obliged in the first instance to establish the facts by certificate or affidavit emanating from the institution or other proof of like reliability. In no event is the surety's own hearsay affidavit of the slightest value.

There may be other situations where the surety's proof will sustain his burden of going forward, prima facie, and the burden of going forward will pass quickly to the District Attorney, particularly in the matter of prejudice to the People. It should be enough that the defendant, his attorney (if any), and the

surety have stated whatever knowledge they possess or deny having and assert that they believe that the People have suffered no loss of rights or prejudice as a result of the delay. Then, it should be the responsibility of the District Attorney to come forward and show any loss of evidence or witnesses, inconvenience and expense to the People, the witnesses or to others, or other adverse effect on the prosecution because of the non-appearance of the bailed defendant at the appointed time or times. As noted earlier, in none of the present cases has the District Attorney undertaken to make such a showing but, instead, has relied on his view of the burden of proof resting on the surety.

And to be sure, the fact that the bailed defendant was either acquitted or convicted does not, by the fact itself, establish that there was no prejudice to the People. Even a final disposition on the merits is only one factor, and is quite unrevealing as to the cause, the expense, the inconvenience, or the limitations, perhaps reflected in the result and effected by the delayed appearance of the defendant. On the other hand, every calendar call on which there is a default is not necessarily more than a minimal inconvenience, if even that, to the People. The defendant, his attorney, or the surety are not likely to know whether police or civilian witnesses were required to be present, or have been made less available, or whether any other circumstances requiring repeated efforts or expenses have been incurred as a result of the defendant's default.

The professional surety does perform a valuable social function and its operation should not be rendered uneconomic or so difficult that its service may be denied absolutely, or effectively, to persons charged with crime.

### 2. MISUNDERSTANDINGS BY DEFENDANT

In some 27 of the instant appeals the asserted ground for remission is that the defendant, because of language difficulties or ignorance, misunderstood when he was required to attend court. The eventual delay in appearance ranged from as little as one day to 156 days. This is the least reliable excuse and the least sufficient. It is too easily fabricated. Moreover, even in the extraordinarily rare case where misunderstanding may be excusable, the surety must show in detail all the circumstances, supported by transcripts of the relevant minutes. The defendant's attorney, if any, should also supply an affidavit. Where the delay is for more than a very short period, the excuse becomes even less plausible and should be supported by persuasive detailed affidavits of persons with personal knowledge.

In this class of application, defendant's prior criminal record is especially relevant. So are the nature and circumstances of the crime with which he is charged for reasons discussed later.

As a minimum the surety should establish that the defendant was not informed of the date for his appearance or had a substantial reason for not knowing the date, because of ignorance or a disability of mind or the senses. It should also appear what had been done by his attorney, if any, or the surety, to make sure that the defendant understood and would comply with the direction to appear.

Because of looseness in past practice, the instant appeals should be handled on a relaxed basis, but for future forfeitures and remissions, the excuse should rarely suffice and then only on the most cogent showing based on competent evidence, and, except in explained unusual circumstances, on corroborated proof.

### 3. ILLNESS OF DEFENDANT

Of course, the affidavit of the surety, relying on hearsay, is insufficient to establish the excuse for defendant's nonappearance on the ground of illness. Moreover, the defendant's affidavit must be detailed and explicit, showing that the illness was a disabling one or made appearance hazardous. A medical certificate for a serious disabling illness may suffice, but for anything less a detailed explanatory medical affidavit should be required. And then, the failure at the appointed time or immediately thereafter to advise the court by attorney or other person of the nonappearance should be explained by plausible and sufficient affidavit of one with knowledge of the facts.

Again, because of the looseness in past practice a relaxed approach may be justified as to past cases, but for future remissions the requirements should be strictly applied.

### 4. ILLNESS OF OTHERS

Only three defendants gave illness of relatives as an excuse for nonappearance. This is an unreliable excuse. In order for it to be supported, for future remissions at least, there should be evidence concerning the nature of the illness and its effects equivalent to that required when the defendant himself is ill. Beyond that, there should be detailed and corroborated evidence that the defendant was required to attend the ill person, or others left unattended, because of the illness, together with detailed, plausible, and sufficient explanation, why the excuse could not be presented to the court at the appointed time by another.

It will be the rare case, indeed, in future remissions, where this excuse should suffice.

### 5. OUT-OF-STATE CRIMINAL CONFINEMENT

An out-of-State criminal confinement should, ordinarily, not avail, unless the defendant has been first surrendered. Ordinarily, if the fact is established, the excuse should suffice; the falseness of the arrest or confinement in the other jurisdiction is not material. In this connection it is material to distinguish between the situation when bail is forfeited and when a remission is sought. (See, generally, in this area, e.g., *People* v. *Manufacturers Cas. Ins. Co.*, 208 Misc. 504, granting remission after defendant's surrender; semble contra, *Phoenix Fire Ins. Co.* v. *Mowatt*, 6 Cow. 599; *Taylor* v. *Taintor*, 16 Wall. [83 U. S.] 366, 371, cited in *People* v. *Fiannaca*, 306 N. Y. 513, 517, *supra*; *People* v. *Dellamura*, 28 N. Y. S. 2d 584, remission denied on ground of Statute of Limitations and defendant had not surrendered; cf. dictum in *People ex rel. Nugent* v. *Board of Police Comrs.*, 114 N. Y. 245, 249, favoring remission with respect to a Federal arrest; dictum, *Matter of Continental Cas. Co.* v. *People*, 202 Misc. 740, 743; *Neresheimer* v. *Bowe*, 11 Daly 301, involving forfeiture prior to surrender; see, also, 8 C. J. S., Bail, § 92, pp. 263–264; Ann. 4 ALR 2d 440 *et seq.*, Bail—Discharge of Sureties.)

It should suffice that a surety guarantee the defendant's appearance whenever possible unless barred by law; it should not also be obliged to guarantee his good behavior or his good fortune in avoiding other confinement. Certainly, the precedents are neither so clear nor so modern as to dictate a contrary view. But, of course, the right to remission should await, except again, in extraordinary circumstances, the surrender of the bailed defendant. In this connection the comment in *People* v. *Fiannaca* (306 N. Y. 513, 517, *supra*) quoted above is quite relevant, namely, "Death, insanity, imprisonment on another charge may, under some circumstances, warrant remission". To be sure, Judge FULD was not referring, necessarily, to out-of-State confinements; but the ease with which State lines may be and are crossed these days suggests a broadening of the view which may have once prevailed. On the other hand, confinement in a foreign country is quite another matter and upon that the court does not now pass.

In this class of case the surrender of the defendant, before an application may be made, will, generally, be essential. Until surrender, there is still no performance of the obligation to appear, and it is not yet known whether expense to the People

will be involved in producing the defendant's appearance on the bailed charge. On the other hand, there will be problems for a surety where the defendant is confined elsewhere and the limitation period provided by section 598 of the Code of Criminal Procedure will expire before he may be surrendered. This may place a special burden on the surety to avoid declaration of a forfeiture in the first instance and to obtain proper adjournments to prevent the running of the limitation period. Or, perhaps, the surety may apply for remission within the one-year limitation period and ask the court to condition the remission upon the surety's undertaking to surrender the defendant when his out-of-State confinement is ended and to pay any expenses of procuring the defendant's presence before the court. The statute provides that the court in granting remissions may impose such terms as may be just (Code Crim. Pro., § 597).

### 6. RELEVANT CIRCUMSTANCES

In addition to considering specific grounds for remission, there are other factors which may or should control the disposition of a motion for remission.

Whatever the excuse, if the defendant has contributed by careless, reckless, or willful act to the event offered as an excuse, it should, generally, require a denial of the motion. Similarly, if the surety, directly or through the attorney for the defendant, has been negligent in maintaining the surety's obligation to see that the defendant is aware of his obligation to appear at the appointed time, this militates against, if it does not negate entirely, the right to a remission. It is still true to some extent that " [w]hen bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." (*Taylor* v. *Taintor*, 16 Wall. [83 U. S.] 366, 371, *supra*.) On the other hand, there may be cases where the delays and adjournments sought and obtained by the People have contributed to lulling the defendant into a laxity or outright default, and the delay to the People has been comparatively trivial. There may be other conduct by the People offsetting a relatively minor default or delay by the defendant.

As already touched upon, the defendant's prior criminal record and the circumstances of the current charge of crime are relevant in determining his motives for nonappearance and evaluating the plausibility of his excuse. In classes of crimes most often associated with organized groups, such as commercialized gambling, narcotics violations, and prostitution, the defendant is often not operating alone as an individual. If that

be the case, then it is equally likely that members of the group with which he is associated are sufficiently sophisticated and motivated to attempt to manipulate the criminal proceedings. (This implies no facile assumption of such association, but neither is it any gullible ignoring of the facts of life in a society in which commercialized crime is highly organized.*) Consequently, with respect to such defendants, it is necessary that the surety show that the defendants' alleged acts upon which the People rely to sustain the charges and the events upon which defendants rely as an excuse were of a pattern independent of concerted activity, associated lawyers, or others who were in a position to advise them, or to make appearances and explanation for them when occasion required it and they could not appear. The similar burden need not be as heavy, of course, for persons charged with highly individualized crimes, like reckless driving, and in a proper case, like larceny or assault.

While it is incumbent upon the motion court to assess the character of the crime charged and whether or not it may have arisen in the organized crime complex, it is also true that there is no warrant for imposing forfeiture or withholding remission as an added sanction for the crime itself. Bail stands as security for the appearance of the defendant in a criminal action; in neither the amount in which it is fixed nor the occasion for its forfeiture or remission should the determination be influenced by the desire, or even need, to impose additional punishment upon the defendant. On the other hand, regardless of the "accidental" quality of the crime, its individualized character, or even the innocence of the defendant, a remission is not justified where the excuse for default is wanting or the People have been prejudiced.

Lastly, even an acquittal of a crime which arises normally in an organized crime complex is not in and of itself much evidence that the defendant has not been associated with others in the defense of the prosecution.

### 7. PARTIAL REMISSIONS

There are instances where a partial remission should be applied rather than a total forfeiture or a total remission. There are cases involving, so far as one can tell, individualized crimes where the defendant is not wholly without fault in failing to appear. Nevertheless, especially in the light of the amount of the bail forfeited, forfeiture might work too severe a penalty on the defendant, assuming that he, his family, or his

---

* (See, e.g., *Matter of Mogel*, 18 A D 2d 203.)

friends are responsible to the surety. For that matter the loss to the surety may also be quite disproportionate to the degree of fault involved either on the part of the defendant or the surety. With respect to the surety it might show unusual effort and expense on its part to locate or procure the presence of the defendant. This merits consideration. In this respect, even if the crime charged is in the organized crime category, the surety may be able to make out a case meriting at least partial remission.

Because partial remission places such great discretion in the court, it is desirable to have some uniformity of standards. It is, therefore, especially desirable that the motion court not only explain the ground for the remission but the basis on which the proportionate remission is determined.

## 8. CONCLUDING CONSIDERATIONS

Remission is not the rule but the exception after forfeiture. This is the teaching in the *Fiannaca* case (306 N. Y. 513, *supra*), and it is the teaching of all the cases preceding it and those following it. The burden of proof, to be sure, rests on the surety if ground for remission is to be established.

The factor lending strictness to the application of the principles is the need to avoid trifling with the administration of criminal justice, let alone cynical manipulation, and the fact that the surety has the means and the motive to require a defendant to comply with the orders of the court. If he has not, then the defendant should not be bailed, or the money sum should be readily forfeited without further recourse.

There are, however, two countervailing factors sometimes staying the harsh application of the principles. Professional sureties and the bail device perform a useful and humane social purpose in obvious ways. In addition, the possibility of remission in a proper case motivates the surety and others to incur expenses and engage in substantial efforts to procure the appearance of a defendant after forfeiture. Remission made too facile, however, will defeat all the purposes expressed in these several factors, those making for relaxation as well as those making for strictness in the application of the principles.

Sensitive consideration of the several factors is the touchstone to be applied in determining whether there should be a remission or not or whether there should be a partial remission. On no view can there be automatic remissions based on rules-of-thumb related to shortness of delay, final disposition on the merits of the criminal charge, other confinement of the defendant, or, of course, the fact of his surrender, even if by the surety.

All of the instant appeals, even those in which the court may affirm the remissions, reflect a barrenness of facts which would elucidate in order to permit sensitive application of the principles. Even the District Attorney relies upon *pro forma* affidavits of identical language. In some of these cases, indeed, the final disposition, if any, is not shown. The records on these appeals might suffice for the application of mechanical rules, but not for the rational exercise of a judicial discretion within the applicable principles subject to the policies upon which they are based. For the future such records should not suffice to support an exercise of discretion on review by this court.

\* \* \*

It is now appropriate to turn to the disposition of the individual appeals. For convenience, the classification used by the District Attorney in grouping the appeals is followed.

A. THE MISUNDERSTANDING CASES

In the cases in which the principals were Louis Dixon, Eugene Lockhart, Roberto Colon, Ronald Peek, Lumos Myles, Antonio Bracero and Abdul Malik the orders granting the motions for remission of the forfeiture of bail should be reversed, and the motions remanded to Special Term with leave to the respondents to supply proper proof. In each of these cases only the affidavit of the surety was supplied. Moreover, the standards discussed above should be applied, except that since they arose in the past their application need not be as strict as should be the requirement in the future.

In the case of Louis Dixon, however, in which the delay was as long as 61 days, even if adequate affidavits are supplied, the remission should not exceed 50%.

In the case of David Beasley the order granting the motion for remission of the forfeiture of bail should be modified to limit the remission to 50% of the forfeiture because of the long delay in the surrender of the defendant, namely, 156 days.

In the cases of Angel Alama, Arthur Felder, Henry Powers, Angelo Nanni, George Gilchrist, Charles Nicholson, Jose Lago, Joseph Strongi, Constantine Zeppa, Frank Morris, Arthur Everett, Theodore Kempinski, John Williams, George Isaacs, Bernice Spriggs, Johnson Hinton, Rene Alvarez (two cases) and Ernest Gill the orders granting the motions for remission should be affirmed. These affirmances are on the basis that the cases arose in the past under the loose practice which had developed. They do not constitute a valid precedent for the future when the standards should be strictly applied.

## B. ILLNESS OF THE DEFENDANT CASES

In the cases involving the principals Ronald Goodman ($1,000 forfeited Feb. 3, 1964), Peter Reyes and James Benson, the orders granting the motions for remission should be reversed and the motions remanded to Special Term with leave to the respondents to submit additional proof. In each of these cases only the affidavit of the surety was submitted, and in the case of James Benson the hospital certificate supplied does not cover the whole period during which the principal failed to appear.

In the cases of Ronald Goodman ($1,500 forfeited July 3, 1963), Marie Teruel, Nathaniel Scott, James Faircloth, Hilliard Neal, Zachariah Latta, William Braddock, Lucius McIver and Elaine Brown, the orders granting the motions for remission should be affirmed. The affirmances are on a retrospective basis; for the future the standards should be strictly applied.

## C. ILLNESS IN THE FAMILY

In the cases involving the principals Florence Herbert, Thomas Greene, Oliver Slade or Shade (three cases) and Floyd Robinson, the orders granting the motions for remission of the forfeiture of bail should be affirmed. The case of Floyd Robinson is an unusual one. Bail was forfeited in his case on December 9, 1963. Five days before, on December 4, 1963, sentences on him in two other cases were suspended on condition that he report to the Federal hospital at Lexington, Kentucky, for treatment. He was admitted to that hospital on December 12, 1963 and no final disposition is shown, or even that he had surrendered. These affirmances are solely on a retrospective basis; in future cases the standards should be strictly applied.

## D. OTHER INCARCERATION

In the cases involving the principals Rudolf Seymour, Celso Carillo, Joseph Pitts, Francisco Donato, Riley Ford and Sergio Chapparra, the orders granting the motions for remission of the forfeiture of bail should be affirmed. In each of these cases the confinement on another charge was established either by a certificate of the prison or there was confinement in a local institution of the character discussed above.

In the case of Fred Fegel the order granting the motion for remission should be reversed and the motion remanded to Special Term, with leave to the surety, if it be so advised, to submit additional proof and propose conditions in accordance with the views above expressed. In this case the principal has been confined outside the State and has not yet been returned for surrender and appearance before the court.

In the case of Eddie Cohen the order granting the motion for remission should be reversed, and the motion remanded to Special Term with leave to the respondent to supply proper proof. The warrant of arrest for Eduardo Cohen Padron in Florida does not establish confinement for any particular period and is not perfect in establishing the identity of the person described in the warrant as that of the bailed defendant.

### E. MISCELLANEOUS CASES

In the case involving the principal Oscar Winslow the order granting the motion for remission of the forfeiture of bail should be modified to limit the remission to 80% of the bail forfeited. In this case the principal claimed that he could not make court because the New Jersey Turnpike was fogbound. This excuse is quite inadequate. On the other hand, he was being held to answer a charge of driving while intoxicated, there had been two prior trial adjournments, his bail was $500, and there was only a two-day delay. Eventually he pleaded guilty and was fined $50. Under the circumstances a forfeiture of 20% of his bail is quite adequate.

In the two cases involving the principal Romeo Prioleau the orders granting the motions for remission should be modified to limit the remission to 50% of the forfeited bail. The bail in each of these cases was $1,500. The excuse offered was quite inadequate; it was that the defendant owned a house in South Carolina that was burned down. The delay in appearance was a long one of 237 days. In view of the long delay and the poor excuse a total remission is unjustified. On the other hand, since the bail amounts are so large relative to the misdemeanor charged a forfeiture of half the bail is probably appropriate.

In the case of Robert Grate the order granting the motion for remission should be modified to limit the remission to 80% of the bail. The amount of the bail was $500, the charge was that of reckless driving, and the excuse given was that the principal was waiting for a paycheck to arrive so that he could pay his fine when he appeared in court. The excuse was a weak but likely one and the delay was only 12 days. A forfeiture of 20% of the bail, namely, $100, is an adequate sanction imposed on top of the fine which the principal paid in connection with the criminal charge proper.

\* \* \*

Accordingly, as indicated above, the orders granting the motions for remission of the forfeiture of bail should be respectively reversed, modified, and affirmed, in each instance, on the

law, on the facts, and in the exercise of discretion, without costs to either party.

Settle order in cases in which the order is not to be affirmed.

BOTEIN, P. J., VALENTE, McNALLY and STEVENS, JJ., concur.

In cases involving principals Rene Alvarez and others, orders, entered on July 13, 1964 and July 14, 1964, unanimously affirmed, without costs.

In cases involving principals Angel Alama and others, orders, entered on July 14, 1964, unanimously affirmed, without costs.

In the case involving principal Lumos Myles, order, entered on July 16, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to supply proper proof. Settle order.

In the case involving principal Louis Dixon, order, entered on July 16, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to supply proper proof, remission, however, even if adequate affidavits are supplied, not to exceed 50%. Settle order.

In the case involving principal Oscar Winslow, order, entered on July 14, 1964, unanimously modified, without costs, on the law, on the facts, and in the exercise of discretion, to the extent of limiting the remission of the bail forfeited to 80% and, as so modified, the order is otherwise affirmed. Settle order.

In the case involving principal David Beasley, order, entered on July 13, 1964, unanimously modified, without costs, on the law, on the facts and in the exercise of discretion, to the extent of limiting the remission of the bail forfeited to 50% and, as so modified, the order is otherwise affirmed. Settle order.

In the case involving principal Peter Reyes, order, entered on July 13, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to submit additional proof. Settle order.

In the case involving principal Abdul Malik, order, entered on July 14, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to supply proper proof. Settle order.

In the case involving principal James Benson, order, entered July 14, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion

remanded to Special Term with leave to respondent to submit additional proof. Settle order.

In the case involving principal Ronald Goodman, order, entered July 14, 1964, granting respondent's motion to remit the forfeiture on February 3, 1964, of a $1,000 undertaking, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to submit additional proof. Settle order.

In the case involving principal Romeo Prioleau, orders, entered on July 14, 1964, unanimously modified, without costs, on the law, on the facts and in the exercise of discretion, to the extent of limiting the remission of the bail forfeited, in each case, to 50% and, as so modified, the orders are otherwise affirmed. Settle orders.

In the case involving principal Robert Grate, order, entered July 14, 1964, unanimously modified, without costs, on the law, on the facts and in the exercise of discretion, to the extent of limiting the remission of the bail forfeited to 80% and, as so modified, the order is otherwise affirmed. Settle order.

In the case involving principal Ronald J. Peek, order, entered on July 14, 1964, unanimously reversed, without costs, on the law, on the facts, and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to supply proper proof. Settle order.

In the case involving principal Fred Fegel, order, entered on July 13, 1964, unanimously reversed, without costs, on the law, on the facts and in the exercise of discretion, and the motion remanded to Special Term, with leave to the surety respondent, if it be so advised, to submit additional proof and propose conditions in accordance with the views expressed in the opinion of BREITEL, J., filed herein. Settle order.

In the case involving principal Eddie Cohen, order, entered on July 14, 1964, unanimously reversed, without costs, on the law, on the facts and in the exercise of discretion, and the motion remanded to Special Term with leave to respondent to supply proper proof. Settle order.

In the case involving principal Eugene Lockhart, order, entered on July 14, 1964, unanimously reversed, without costs, on the law, on the facts and in the exercise of discretion, and the motion remanded to Special Term with leave to the respondent to supply proper proof. Settle order.

In the case involving principal Roberto Colon, order, entered on July 14, 1964, unanimously reversed, without costs, on the

law, on the facts and in the exercise of discretion, and the motion remanded to Special Term with leave to the respondent to supply proper proof. Settle order.

In the case involving principal Antonio Braccro, order, entered on July 14, 1964, unanimously reversed, without costs, on the law, on the facts and in the exercise of discretion, and the motion remanded to Special Term with leave to the respondent to supply proper proof. Settle order.