Seymour Bieber, Spec. Ref.
Pursuant to stipulation between counsel for the surety company and the District Attorney of New York County, and by designation of the Administrative Judge of the Supreme Court, First Judicial District, 56 applications regarding reconsideration of motions to remit forfeitures of bail were referred to me, to hear and determine.
At the commencement of these proceedings, the District Attorney and counsel for the surety were afforded an opportunity to submit any additional evidence, either in writing or by way of testimony, which they deemed advisable or necessary to supplement the papers already on file. Reconsideration and determination of the referred matters, therefore, will be made de novo, based upon all of the proof now before me.
In order to expedite the disposition of the referred matters, the eight motions concerning defendants principals Weber (2 motions), Brewer, Simmons, Frazier, Fisher, Staton and Gonzalez, are consolidated here, solely for the purpose of this determination, inasmuch as they involve a similar excuse of “ misunderstanding ” for their failure to appear in court, which ultimately resulted in the subject forfeiture of bail.
The record establishes that defendant Fisher was arrested and charged with violating sections 974 and 975 of the Penal Law (gambling statutes). On May 30, 1964, he was released on $1,000 bail, and, subsequently, was required to appear for sentencing on August 31, 1964. Bail was forfeited when he failed to do so. He voluntarily appeared on September 1, 1964 and states in his affidavit on this motion that the “ reason for not appearing was due to a misunderstanding as to the adjourned date ”.
*651 Simmons was arrested and charged with felonious assault and released on $1,000 bail. Bail was forfeited upon his failure to appear in Criminal Court on September 10, 1964 for a scheduled trial on a reduced charge of assault in the third degree. He voluntarily appeared on September 11, 1964. No affidavit of this defendant principal has been submitted on the pending application. The affidavits of counsel for the surety and of an agent of such insurance company state, in substance, that Simmons’ failure to appear on the required date was due to a misunderstanding.
Frazier was arrested and, like Fisher, charged with violating sections 974 and 975 of the Penal Law. He was released on $1,000 bail which was forfeited when he failed to appear as scheduled, on May 21,1964. He voluntarily appeared on May 22, 1964. His affidavit on the pending application, in substance, states that the “ reason for not appearing was because of misunderstanding as to date ”.
Weber had two cases pending against him in the Criminal Court. He had been arrested and charged with violating section 1897 of the Penal Law (j)ossession of a weapon) and section 1747-d of the Penal Law (possession of hypodermic instrument). Upon his failure to appear in court on July 9,1964, the respective bails of $1,000 and $500 in both matters were forfeited. He voluntarily appeared four days later, on July 13, 1964. His affidavits herein merely state ‘11 mistook the date of my appearance
Brewer, with a history of five prior arrests, including three policy convictions, was once again charged with violating the gambling statutes. When he failed to appear on May 5, 1964, bail of $500 was forfeited. He voluntarily surrendered himself two days later, on May 7, 1964. Hearsay affidavits of the surety’s counsel and agent state defendant’s nonappearance was “ due solely to a confusion as to the dates because of other cases pending against him ”.
Under applicable law, in view of the facts and circumstances presented here, the total remissions of the bail forfeitures sought by the surety may not properly be granted (see People v. Stuyvesant Ins. Co., 24 A D 2d 421; People v. Public Serv. Mut. Ins. Co. [Reid], 24 A D 2d 421). While it is recognized that professional sureties perform a necessary and desirable social function (with which the courts have no desire to interfere or to impede unnecessarily), nevertheless, the orderly administration of justice and a proper respect for our judicial processes require some sanction to be imposed for a criminal defendant’s *652 unsatisfactory explanation and unwarranted failure to obey a mandate of the court as to his subsequent appearance there. Undoubtedly, as the surety here urges, a primary purpose of bail is to compel or assure attendance rather than to produce revenue. However, in this State, where it appears we may be lagging behind other jurisdictions in our continued strict common-law approach to this problem (see “ Bail: Developments in the Areas of Forfeiture and Remission ’ ’, Notre Dame Lawyer, June, 1965, p. 455 et seq.), it is still the established and controlling law that remission is not the rule but the exception after forfeiture (People v. Fiannaca, 306 N. Y. 513; People v. Peerless Ins. Co., 21 A D 2d 609, 621).
The guidelines of the Appellate Division in People v. Peerless Ins. Co. (supra), set within the framework of the controlling opinion of the Court of Appeals in People v. Fiannaca (supra), clearly indicate that alleged “ misunderstandings by defendant ” are “ the least reliable excuse and the least sufficient ” (supra, p. 616). Moreover, in cases such as these, the caveat of the Appellate Division was completely unheeded here by the surety, to wit: “As a minimum, the surety should establish that the defendant was not informed of the date for his appearance or had a substantial reason for not knowing the date, because of ignorance or a disability of mind or the senses. ’ ’ (Supra, p. 617.)
It is apparent from the bare assertions of defendants, counsel, and the surety’s agent, in the affidavits referred to hereinabove, that no “ substantial reason ” is given for the failure of any of these defendants to appear on the scheduled day in court other than, in substance, an ‘ ‘ inadvertent misunderstanding ’ ’. Such excuse, unsupported by any other mitigating factor, therefore, must be deemed insufficient for the purposes of total remission. (See People v. Stuyvesant Ins. Co., supra; People v. Public Serv. Mut. Ins. Co., supra.) Moreover, this is a particularly inept excuse in matters such as Fisher and Brewer, where the record indicates the defendants had prior personal experience in criminal court proceedings and, therefore, should have been aware of the necessity of ascertaining correctly the return date of their appearance. While the surety argues that an indemnitor should not be prejudiced by the defendant’s criminal record, nevertheless, the fact that an individual has had past experience in a criminal court may bear directly on the credibility of the excuse offered by him for his failure to appear. This certainly would be true in those repetitive crimes such as gambling and prostitution, most often associated with organized groups (see People v. Peerless Ins. Co., supra, pp. 619-620).
*653 In cases such as Brewer, Staton and Simmons, hearsay affidavits of the surety’s counsel or agents alone are clearly insufficient to establish a valid excuse. At the very least, the moving-papers should be supported by an affidavit of the defendant principal setting forth, in his own language, the excuse for his nonappearance. If, for some reason, he is not available to the surety for this purpose, this fact should appear in its moving-papers, together with a statement as to the efforts made to obtain such supporting affidavit from their principal.
In addition to the foregoing, there are other criteria which merit consideration in these applications for remissions and, particularly where the excuse offered for nonappearance is merely an alleged “ misunderstanding ”. Thus, it is significant to ascertain whether the date of forfeiture was (1) a hearing-date, (2) a trial date or (3) a sentencing date. Obviously, a failure to appear at a hearing or trial (even if appearance follows on the next day), ordinarily, would work a greater hardship or prejudice than a failure to appear for sentencing, inasmuch as on the former occasions, the People usually have prepared their case for this day certain, have witnesses on hand to testify and are ready to proceed to try the scheduled matter. A defendant’s voluntary appearance, even on the next day, does not cure this situation, inasmuch as, in all probability, neither the court nor the District Attorney will then expect or be prepared for his appearance, hearing or trial.
Likewise, if forfeiture takes place at a scheduled hearing or trial, consideration must also be given as to whether witnesses, such as police, civilians or experts, were present in court and whether they were subsequently available again for the prosecution of the case. Moreover, as noted with regard to Fisher and Brewer (supra), a defendant’s prior criminal record and the circumstances of the current criminal charge are relevant in evaluating the plausibility of his excuse. Nonappearance at a hearing or trial date by an experienced or knowledgeable defendant, perhaps a member of an organized group, may be indicative of an effort to “ Judge shop ”, that is, to avoid an appearance before a Judge who is believed to be unfavorably disposed to the defendant or who is reputed to be “ hard ” in matters involving a particular criminal act.
While the surety here asserts that Criminal Court Judges, ordinarily, are in the same Part on weekly assignments, nevertheless, it is obvious that failure to appear on the scheduled date does not mean the hearing or trial will take place before the same Judge immediately upon the defendant’s appearance. *654 Certainly, the District Attorney may- then require time to gather and produce his witnesses and proof again, thus necessitating a delay or postponement.
Moreover, contrary to the surety’s argument, a defendant who», is scheduled to appear in court during the latter part of a Judge’s weekly assignment can, by his willful failure to appear for only a day or two, avoid the Judge then presiding in a particular Part of the Criminal Court. By such maneuvering,, the defendant is able, in effect, to obtain an unauthorized adjournment of his scheduled case which would not otherwise be available to him. Thus, at the very least, he can dictate the day on which his case will not be tried. This common method of “ Judge shopping ” is a practice which cannot be condoned or tacitly approved.
Giving due consideration to the foregoing and in order to reflect all the various criteria to be considered in applications for remissions, as stated hereinabove and in pertinent case law (supra), upon the evidence before me, for those cases involving repetitive crime of an organized nature (gambling, prostitution, etc.) or those concerning an inherent danger or injury to another (assault, possession of a loeapon, etc.), tvhere an unsatisfactory or unsupported excuse for nonappearance of a defendant has been offered, I find that the following schedule sets forth reasonable rates of forfeiture and provides for partial remissions within the enunciated guidelines:
A — Where a defendant appears, voluntarily, within a period of one week and bases his prior failure to appear on a “ misunderstanding”:
1 — Total forfeiture of bail, ordinarily, would work too severe a penalty upon defendant, his family or friends who, undoubtedly, will ultimately be responsible to the surety (People v. Fiannaca, supra, pp. 516-517; People v. Peerless Ins. Co., supra, pp. 620-621).
2— (a) Where forfeiture occurs on a scheduled hearing or trial date and defendant is without a prior record, the surety shall pay $25 plus 1% per day of the face value of the bond;: (b) where forfeiture occurs at sentencing, the surety shall pay 1% per day of the face value of the bond.
3— (a) Where forfeiture occurs on a scheduled hearing or trial date and defendant has a prior record, the surety shall pay 5%, plus 2% per day of the face value of the bond; (b) tvhere forfeiture occurs at sentencing, the surety shall pay 5% or $25, whichever is less, plus 1% per day of the face value of the bond.
*655 4 — Where the failure to appear extends beyond one week (7 days):
(a) In addition to the costs above enumerated, the surety shall pay an additional $25 per week where the defendant surrenders himself within one month after forfeiture.
(b) Subsequent to the one-month period set forth in subdivision 4 (a), in addition to all other costs, the surety shall pay $50 for each additional month during which a defendant is not produced.
B — Where affidavits of a police officer (see Frazier, Brewer and Weber, supra) or an expert witness establish their presence in court as a potential witness on the date of forfeiture, the surety shall pay, in addition to all other amounts, the sum of $25 per witness. Where similar proof establishes the presence in court of other civilian witnesses, the surety shall pay, in addition to all other amounts, the sum of $10 per witness.
0 — Upon sufficient proof that defendant’s conduct was willful and represents a flagrant disrespect for the court or the law (e.g.— an uncorroborated or unsatisfactory excuse by repetitive offenders involved in commercialized gambling, prostitution and narcotics violations), in the discretion of the court, additional penalties by way of forfeiture may be imposed as the interests of justice, and as the facts and circumstances of the case may warrant.
The application regarding Brewer is an example of a case which warrants such additional forfeiture. Brewer’s repetitive offenses show a complete disregard for the law and his failure to appear after a date was fixed peremptorily against him indicates a willful and flagrant disrespect for the court. Thus, in addition to other amounts set by the applicable schedule (supra), in this instance, the surety shall also pay the sum of $100.
D — In all bail remission proceedings, upon satisfactory proof thereof, the surety is entitled, by why of credit against the forfeiture, to an amount at least equal to any unusual expenditures necessarily incurred by it as a result of efforts to compel the attendance of their principal.
Applying the foregoing schedule, as an ekample, to defendant Simmons, the surety is required to pay the sum of $35 ($25, plus $10 [1% of $1,000 bond]). With reference to defendant Frazier, the surety is required to pay the sum of $60 ($25, plus $10 [1% of $1,000 bond], plus $25 [policeman-witness present in' court on day of forfeiture]). With reference to defendant. Fisher, who had a previous record and failed to appear fór sentencing (supra),- the surety is' required to pay $35 ($25 [5% or $25, *656 whichever is less], plus $10 [1% of $1,000 bond]). The surety’s forfeitures in the applications concerning defendants Brewer and Weber may be similarly computed.
With respect to defendant Staton and Gonzalez, however, there are several significant factors which distinguish their applications from the others here involved. Unlike the crimes charged against Weber, Simmons, Frazier, Brewer and Fisher, the violations by Staton and Gonzalez are less significant, “individualised” offenses rather than those associated with organized groups (e.g., gambling, narcotics, prostitution, etc.) or those involving inherent danger of harm or injury to another (e.g., assault, possession of a weapon, etc.).
Defendant Staton was charged with operating an unregistered motor vehicle, and released on $500 bail which was forfeited when he failed to return to the Criminal Court on May 4, 1964. He voluntarily appeared on May 6, two days later, and was fined $25.
Defendant Gonzalez was charged with passing a signal light. He failed to appear on May 2, 1963 and bail of $500 was forfeited. He voluntarily appeared on May 7, was paroled in his own custody and subsequently fined $25.
Both Staton and Gonzalez claim their failure to appear in court was due to an alleged belief that their case was to be tried on a different date. Significantly, no affidavit of either of these defendants was submitted by the surety to support its moving papers.
Nevertheless, as noted in the Peerless case (supra, p. 617), the nature and circumstances of the crime warrant consideration in determining an application for remission. Moreover, while an alleged excuse, under prevailing law (supra), may not be sufficient to warrant a full remission, a defendant should not be additionally penalized in cases where the court is unavailable on the day a defendant appears.
Thus, in Staton’s case, it is significant that he appeared on May 5, but because of the unavailability of the Judge presiding, he was advised to return the following day, which he did. For the purposes of this proceeding, therefore, his default in appearance will be limited to one rather than two days.
Moreover, neither Staton’s nor Gonzalez’ case appears to present a problem where witnesses were in court on the day bail was forfeited, inasmuch as no affidavit to such effect has been filed by the District Attorney. Both of these defendants were tried subsequently and, as noted, each was fined $25.
In view of the nature of these two violations (supra, traffic law infractions) the absence of any specific proof of substantial *657 harm to the People by Staton’s and Gonzalez’ failure to appear when due, and the fact that fines have already been levied by the court and paid by these defendants, I find the imposition of a forfeiture in the amounts outlined in the above-listed schedule would be entirely too great and disproportionate to the facts and circumstances involved in these two matters.
Therefore, giving due consideration to the foregoing, in cases such as Staton’s and Gonzalez’, where a defendant charged with an individualized crime not involving inherent harm or injury to another person (supra), voluntarily appears within one week after forfeiture, I hold that, in lieu of the aforementioned schedule, 10% per day of the amount of the fine theretofore levied against such defendant is a reasonable, proper and sufficient forfeiture.
Settle a separate order accordingly in each of the eight proceedings here involved, providing for remission of that part of the forfeited bail which exceeds the payments required of the surety by application of the schedules set forth hereinabove.